### SCOFIELD *v.* CLARKE.

1. PLEADING—FRAUD—CONSPIRACY.

Plaintiff's declaration for fraud and conspiracy averring that the defendants conspired together to cheat and defraud the general public by obtaining credit for one of them on consignments of eggs, which the principal wrongdoer paid for by checks, without sufficient funds, and that he had no intention to pay for the goods when he bought them, and that defendant bank and its officials aided and abetted him in his unlawful scheme, sufficiently set forth a cause of action for fraud and conspiracy without describing in detail the means employed to effect the illegal purpose intended.

OSTRANDER and STONE, JJ., dissenting.

2. SAME—SURPLUSAGE.

In case of failure to establish a concerted design, plaintiff could recover against defendants shown to have been guilty of the fraud without such agreement or scheme.

3. SAME.

Conspiracy may be pleaded and proved as aggravating the wrong of which the plaintiff complains, and to enable him to recover against all the defendants as joint tort feasors; the party wronged may look beyond the actual participants.

Per McALVAY, C. J., and BIRD and MOORE, JJ.

4. FRAUD—SALES.

Evidence that one Andre, who had been for a considerable period a business man in the city of Grand Ledge, conceived a fraudulent design of defrauding his creditors by establishing his credit at a local bank and buying produce on bills of lading of the goods, to 75 per cent. of their value, paying for the same in checks, part of which finally proved to be worthless, that the local bank mailed circular letters to answer numerous inquiries as to Andre's credit, in a more or less favorable way, that Andre owed one of the defendants a long overdue account which could not be collected and the bank had knowledge of the fact, that the officers of the bank knew Andre overvalued a cold storage plant which he owned upon a land contract and concealed the nature of his holding, and were informed that Andre offered slightly more than market prices for butter and eggs, but not establishing knowledge of his guilty intent to defraud persons dealing with him, although its cashier was shown to have had knowledge and to have made a profit out of the transaction, *held*, insufficient to prove fraud and conspiracy of the bank and its officials with defendant Andre.

McALVAY, C. J., and BIRD and MOORE, JJ., dissenting.

5. SAME—TRIAL—RECORD.

The fact that the appearance of defendant Andre was entered by the same attorneys as appeared for other defendants was not evidence of a guilty conspiracy and should not have been commented on by plaintiff's attorney in arguing the case.

McALVAY, C. J., and BIRD and MOORE, JJ., dissenting.

Error to Eaton; Smith, J. Submitted June 20, 1912. (Docket No. 121.) Decided March 28, 1914.

Case by George J. Scofield against William R. Clarke and others for fraud and conspiracy. Judgment for plaintiff. Defendants bring error. Reversed.

*Walbridge & Kelley,* for appellants.
*Elmer N. Peters,* for appellee.

McAlvay, C. J. Plaintiff, for himself and as assignee for several others, recovered a judgment against all of the defendants in an action of assumpsit under section 10421, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13954). The appellants have brought the case before this court for review upon writ of error. The declaration in the case was in assumpsit under the statute quoted. It contained three counts, and was intended to charge fraudulent conduct on the part of defendant Andre, operating under the name and style of the Grand Ledge Cold Storage Company, and the appellants, whereby plaintiff and his assignors were damaged, in that they were defrauded of their property of the value of several thousands of dollars. Defendant Andre was served with process, but did not appear, and judgment was entered against him by default. The appellants, being the remaining defendants, appeared and pleaded the general issue, upon which issue the case was tried.

Owing to the peculiar circumstances out of which this litigation grows, it will be necessary for an intelligent understanding of the case to give a statement of more than usual length. The transactions involved occurred in the month of May and previous months of the year 1906. For several years prior to that time defendant William Andre had been engaged at Grand Ledge, Mich., in the business of buying and shipping farm produce, and had become heavily indebted to

the amount of over $9,000 to the Loan & Deposit Bank of Grand Ledge. To secure this indebtedness, a mortgage had been given to his creditor, and, in order to avoid the expense of foreclosure, he had deeded, in February, 1906, all his real estate so mortgaged to the wife of the principal owner of said bank, taking a contract back, by the terms of which, upon payment of $9,612.96, on or before October 1, 1906, he was to have a reconveyance of this property.

From the statement which follows, it will appear that all of the officers of defendant Grand Ledge State Bank had personal and official knowledge of the financial embarrassment and irresponsibility of defendant Andre.

Defendant Grand Ledge State Bank was incorporated in May, 1905. Its first officers' were defendant William R. Clarke, president; A. B. Shoemaker, vice president; A. R. Gillies, second vice president, and defendant Bert R. Moore, cashier. These were all directors who, together with Mr. Slaght, of Grand Rapids, were the men actively engaged in the management of the bank.

At the time of the organization of the Grand Ledge State Bank, the Citizens' Bank, a private bank, managed by defendant Moore, held past-due paper of defendant Andre to the amount of $1,500; defendant William R. Clarke also held his paper to the amount of about $250; and director Gillies held his paper for about $220. This was all past-due and worthless paper, which neither of these owners had been able to collect. When the defendant Grand Ledge State Bank was incorporated, an arrangement was made to turn over to it the deposits held by the Citizens' Bank, and it was also to take over such commercial paper held by this private bank as would be approved by an examining or discount committee, consisting of Directors Slaght, Clarke, and Shoemaker. The Andre

paper was not accepted by this examining committee, and was not taken over by defendant bank.

It is claimed on the part of the plaintiff that on or about April 6, 1906, defendant Andre approached defendant Bert R. Moore, cashier of defendant bank, stating to him that he intended to go into the business of buying butter and eggs, and he proposed that as fast as a car load accumulated he would consign it to New York by bill of lading, with draft attached, and turn the same into the bank, and receive credit for it, and with the proceeds be able to buy another car load, and by repeating the process keep the business going; that, having paid for all purchases of produce promptly with his checks on defendant bank, he would then for about two weeks raise the price of such produce one-half cent or a cent higher than the market, buy a large amount, consign it direct to New York, and not deposit sight drafts; the checks given by him for the same would then go to protest, he (Andre) to get return of the proceeds direct from the commission men.

The record shows that Andre asked Moore to help him in some way to finance the enterprise he was about to undertake, and offered to pay Moore his old indebtedness, and give him a bonus of $500, if he would assist him. This offer was accepted by Moore and carried out by him. The drafts for Andre's consignments of produce, with bills of lading attached, were taken at the defendant bank and credited at 75 per cent. of face value, for which Andre was charged 25 cents per $100. Defendant Andre opened an account with the defendant bank on April 6th, the date of this agreement, with a deposit of $900, increased later to $1,800, in the name of the Grand Ledge Cold Storage Company. This is the name assumed by defendant Andre under which he carried on his business. Defendant Moore, soon after this agreement

was entered into with Andre, wrote the following letter to Ralph Nixon, an employee in a bank at Linden, Mich., in which Moore was interested:

*"Dear Ralph:*

"Send me over about three small check books. I have a deal on hand that will win out our Andre matter, I think, O. K. The scheme is this: Andre is going to buy April eggs, and pay for the first two weeks. Last two checks will come, and of course no money to pay for them, and they will go to protest. Before this happens, we get our money, and $500.00 besides. Keep it under your hat, and watch Uncle Dudley get the mon.

"Yours,

"B."

Later, Andre talked with defendant Moore about the use of the defendant bank's name as a reference on his stationery. He was sent by Moore, the cashier, to Clarke, the president of the bank, who was law partner with defendant Latting, the firm being the bank's attorneys, and, being unable to find Clarke, Andre talked with Latting with regard to the matter of the reference. Mr. Latting later came to the bank and stated to the cashier, Moore, that he saw no objections to giving the reference. Soon afterwards, at a meeting in the offices of the defendant bank, where a majority of its officers were present, Mr. Gillies, a director and vice president, produced one of Andre's postcards upon which the name of defendant bank appeared, among others, as a reference. In discussing the matter, no one present made any objection to such reference. These postcards were mailed broadcast, making offers to pay one cent higher than local markets for butter and eggs, and were signed, "Grand Ledge Cold Storage Company, per William Andre, Manager." Inquiries from many persons came by mail to defendant bank relative to the Grand Ledge Cold Storage Company, which was the name in which the account was opened by Andre in the defendant

bank. For a reply to these inquiries, defendant Clarke, president of defendant bank, prepared a form of letter to be used and sent out by the bank through defendant Moore. It also appears that defendant Clarke personally answered some of these letters. This form of letter prepared by defendant Clarke was based upon a statement made to the bank by defendant Andre, at the request of Mr. Slaght, a director, who had noticed many of these inquiries in the bank. This statement reads:

"GRAND LEDGE, MICHIGAN, April 26, 1906.
"B. R. MOORE,
          "City.
*"Dear Sir:*
"Hereby make statement of financial standing to date: Plant and real estate complete, with $11,600 against same, $25,000; personal property, such as stock, egg crates, chicken coops, horses and wagons, fixtures, etc., $2,500; deposit in bank, $3,000; which would make a total to my credit of $18,900, above all indebtedness.
          "Most respectfully yours,
     "GRAND LEDGE COLD STORAGE COMPANY,
          "per WILLIAM ANDRE, Manager."

The large item, $25,000 of real estate, is the property which defendant Andre had already transferred by deed to a creditor to avoid foreclosure, as hereinabove stated.

This statement was handed by Moore to President Clarke, who, within a few days, prepared the form of letter before referred to, and which was afterwards used by Cashier Moore in answer to the inquiries which came to the bank relative to the Grand Ledge Cold Storage Company. These answers, of which the following is a sample, were sent out upon the bank's stationery:

"GRAND LEDGE, MICHIGAN, May 10, '06.
"ARTHUR BOLTON,
          "Nessen City.
"In reply to your inquiry of the Grand Ledge Cold

Storage Company, would say that these people opened an account here about six weeks ago. Since which time their balance has run from $2,000 to $4,000. Beyond this fact, we have very little definite knowledge of their financial ability. They make statement to us showing real estate which they valued at $20,000. Incumbrance, $11,600, personal property, consisting of egg crates, chicken coops, horses, wagons, fixtures, on which they place a value of $2,500.00, leaving a net worth, according to their statement, of $18,900. As to who constitutes the company beyond the manager, they do not state, and we do not know.

"William Andre, the manager, is a great hustler, and under proper conditions we think will make money for his company in the poultry and egg business.

"Yours truly,
"B. R. MOORE."

Defendant Andre proceeded to carry out his scheme already outlined, and purchased large quantities of butter and eggs, of which during the first two or three weeks he made car load shipments, and received credit at defendant bank for 75 per cent. of each sight draft which the bank received and forwarded, with bill of lading attached. He sent his checks on defendant bank to all consignors from whom he purchased such produce. These checks were paid promptly at the bank.

During these transactions between Andre and the bank, not all of the bills of lading, with sight drafts attached, brought in by him were credited to his account at 75 per cent. To avoid advancing too much money, some of them were entered as collections, and forwarded.

During this time President Clarke complained to Moore that too much money was being advanced on these bills of lading. Cashier Moore then held back a draft of $990 belonging to Andre to protect the bank, for which Andre was not given credit until May 15th, when the collection on that draft came in, and he was also credited with a Jewell Bros.' check for

$1,600, which balanced his account with the bank. After May 7th the record does not show that Andre made any deposits. This check had been obtained by Moore from Andre on the night of the 14th of May, when he made the settlement referred to in his letter of that date to Nixon.

For the last two weeks he continued in business the purchase of such produce by him, by reason of better prices offered, increased to an amount of about $25,000, for which he sent out his checks on the same bank. These checks were not paid upon presentation, and all went to protest beginning May 16th.

At this time about $18,000 worth of shipments made by him were in New York in the hands of a commission firm named Jewell Bros., for which checks had been sent direct to Andre by them. Payment of such checks, except the one of $1,600 the bank received, was delayed for some reason, whether caused by interference of creditors or not is not clear. Defendant Latting then went to New York in company with Andre for the purpose of securing such payment. He did not succeed, and returned to Grand Ledge with the checks. Defendant Clarke, his law partner, at once took the Jewell Bros.' checks to Detroit, and through a Detroit bank had them forwarded to New York for collection. He waited in Detroit until the bank received a telegram from New York that payment had been stopped.

Proceedings in bankruptcy were then taken by creditors against Andre, and the money owing him by the New York commission men was paid to the trustee in bankruptcy. The creditors realized 33 per cent. on their claims. Of the defendants who filed claims against the estate of Andre in bankruptcy, and received their dividends in full, Cashier Moore proved a claim for $1,600; President Clarke proved a claim for $236.43; Vice President Gillies proved a claim for

$218.73. All of these were old claims for which Andre was indebted to these defendants at the time defendant bank was organized, and all of them knew that this paper had been rejected by the discount committee. No proofs were offered in the case on the part of defendants and appellants.

Of the 60 errors assigned, appellants have waived 17. Those relied upon by them may be considered in groups:

(1) Those assigned upon the allowance by the court of the introduction of any testimony in the case on the ground that the declaration stated no cause of action, and in not requiring plaintiff to elect under which of the counts he claimed the right to recover.

(2) Errors assigned upon the admission of certain exhibits written by defendant Moore, and permitting testimony of witnesses relative to certain exhibits.

(3) Errors assigned upon a remark of plaintiff's attorney during the trial and portions of the argument of plaintiff's attorney to the jury.

(4) In refusing to direct a verdict in favor of all of the appellants.

(5) In refusing to give certain requests of defendants.

(6) Upon certain portions of the charge of the court to the jury.

(7) Upon the denial of defendants' motion for a new trial.

The first assignment of error discussed by appellants was raised by an objection when testimony was first offered on the part of the plaintiff that the declaration was insufficient to authorize any proof to be received under it. The declaration is in assumpsit under section 10421, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13954). It contains three counts, and the objection of appellants is based upon their contention that the declaration does not in any one of the three counts specifically set forth the necessary material facts to constitute a cause of action. The plea in the

case was the general issue, and no bill of particulars was demanded.

The theory of the plaintiff upon which the declaration was framed is that this property was purchased by defendant Andre with the intention at the time of purchasing not to pay for it, that he received the property, and that no part of the purchase price was ever paid. Each count of the declaration charges that the property was so purchased with such intent by defendant Andre, and the other defendants are charged with conspiring, assisting, and taking part in such scheme. Plaintiff contends that the declaration in the case is sufficient, even if it does not show specifically the means to be used, but accurately describes the illegal purpose intended, and that such purpose has been carried out, whereby plaintiff has been unlawfully damaged. *Schwab* v. *Mabley,* 47 Mich. 572, 573 (11 N. W. 390).

In *Longo* v. *Crachiola,* 165 Mich. 509 (131 N. W. 97), which was an action on the case for fraud, and identical with the instant case, except there was no charge of conspiracy, Mr. Justice BLAIR, speaking for the court, said:

"The gist of the plaintiffs' cause of action, as stated in the declaration, is that defendant purchased the plaintiffs' goods, with the intent on his part, at the time of the purchase, not to pay for them, in pursuance of a general scheme to buy fruit and defraud the vendors out of their pay. The evidence tended to support the cause of action, and it was error to direct a verdict for defendant. *Fruit Despatch Co.* v. *Russo,* 125 Mich. 306 [84 N. W. 308]; *Ross* v. *Miner,* 67 Mich. 410 [35 N. W. 60]."

In the instant case, if suit had been brought against Andre alone for fraud as alleged against him in plaintiff's declaration, under the decisions of this court the declaration would have been sufficient to support a judgment against him. For the purpose of recovering

for this injury against others than Andre, plaintiff has added a conspiracy charge that defendants and appellants conspired, assisted, and took part in such scheme. Authorities are abundant which hold that the allegation of conspiracy does not change the nature of this action on the case for damages, or add anything to its legal force and effect. 8 Cyc. p. 647, and cases cited.

If the plaintiff fails in his proof of a concerted design, he may still recover against defendants shown to have been guilty of the wrong without such agreement, and the charge of conspiracy would be considered as surplusage.

Relative to the purpose of an averment of conspiracy and concerted design, the same authority says:

"It may be pleaded and proved as aggravating the wrong of which plaintiff complains, and to enable him to recover against all the defendants as joint tort feasors. The party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it." 8 Cyc. p. 647, and cases cited.

Adding a charge that appellants conspired and acted in concert in aiding defendant Andre to carry out his fraudulent scheme cannot, therefore, be held as affecting the charge of fraud as against him.

"Conspiracy is not the ground of these actions on the case. The cause of action does not result from the conspiracy, but from the thing done, and the damage flowing from it. Here, it is the fraud and damage. Conspiracy, by reason of the connection it involves among the conspirators, may cause individuals to be responsible who, but for the conspiracy, would not be responsible at all." *Bush* v. *Sprague,* 51 Mich. 41, 48 (16 N. W. 222).

In our opinion the averments of the declaration in the instant case that appellants conspired, co-operated, and took part in this unlawful scheme of defendant

Andre are sufficient to allow the introduction of evidence tending to prove such averments under the general issue which was pleaded, and to support a judgment against all of the appellants.

At the close of the testimony in this case the appellants moved the court to require plaintiff to elect under which count of his declaration he claimed the right to recover. This motion was denied, and error is assigned upon such denial. The counts in the declaration which to a certain extent have already been considered are not inconsistent, and it is only when they are that this court has held the plaintiff must elect under which count recovery is asked. Cases cited and relied upon by appellant are within the latter class. Under our practice, which follows the common law, plaintiff is allowed to state in his declaration the same cause of action under several counts which must not be inconsistent. 5 Enc. Pl. & Prac. p. 330. The court was not in error in denying the motion.

Appellants contend that the court erred in admitting in evidence certain exhibits written by defendant Moore, and also permitting witnesses to testify relative to other exhibits in evidence. Defendant Moore was not served with process. The record shows that his plea was entered jointly with all the other appellants by the same attorneys who represent them before this court. This defendant was put upon the stand by plaintiff and testified as a witness in the case. During such examination his attention was called to certain letters which he had written to Ralph Nixon which were admitted to have been received by Mr. Nixon from defendant Moore. Nixon was in confidential relations with Moore, employed in a bank at Linden which Moore owned or controlled. One of the letters in which this Andre scheme is stated is already given. The next one reads:

*"Dear Ralph:*

"You talked too open last night over the phone. Be guarded, and do not say anything about G. L. Cold Storage Co. to any one.

"Yours,

"BERT."

The next is dated April 11, 1906, and the portion claimed to be material reads:

"Andre deal coming just fair. Not many eggs moving.

Yours truly,

"B. R. MOORE."

He next wrote on April 28, 1906, in which the following appears:

"Now, about the other deal, [Andre]. Be careful what you say so we won't be under a shadow. Simply say about like this, that you have known Andre for thirteen years, and he has a large cold storage, etc., commenced with nothing, has always paid his bills, and you believe him to be a hustler and honest. This does not stick you when he dumps them with great force. I will try to get a 500 chk. from him tonight and send you. * * * Now, Andre is to pay me in full and give me as a present of 500. When I get that, I will turn it all to you.

"Yours,

"BERT."

The fact that this Linden bank was the other reference used by Andre on his cards to his customers gives point to the instructions in this letter to Nixon.

The next letter reads:

"May 14, '06.

*"Dear Ralph:*

" * * * The golden goose has laid the egg at last, and I am on easy street now so far as this deal is concerned. Will turn in soon. I settled for a bonus of 350 to get it cleaned up.

"Yours truly,

"B. R. MOORE."

Below appears:

"2,100 all told—Andre note 1,000, Andre note 250, Andre note 192, O D 211, and interest, 1,653."

Moore's testimony indicates he figured interest about $100.

The objection made to the introduction of these letters was because they did not tend to prove a conspiracy, and were incompetent until a conspiracy had been shown. They were offered by plaintiff upon the theory that he was entitled to recover against any or all of the defendants. The exhibits clearly show that they were material as bearing upon the connection of defendant Moore with the transaction, and for that purpose were properly admitted. The jury was properly instructed as to their use as evidence in the case.

During the taking of testimony in the case a witness from Indiana, who had received one of the postal cards Andre sent out, offering to purchase produce, which gave defendant bank as a reference, testified that he wrote to the bank, and received its answer. He then shipped his goods, and received a check, which was not paid. He had not preserved the card or letter, and could not produce them. He was shown a card from Andre and a letter from the bank which had been duly identified by another witness, and was allowed to testify, over objection, that the card and letter received by him were similar to those shown him; the objection being that the card and letter produced had not been sufficiently identified. The objections were without merit. The identification of the card was sufficient, and defendant Moore admitted that the letter was similar to those sent out by the bank. No error was committed in allowing them in evidence.

The next errors assigned are upon the remark of plaintiff's attorney while examining defendant Moore, and certain statements made by him in his argument to the jury. Defendant Moore was being examined relative to Andre obtaining permission to use the bank

as a reference. Some colloquy occurred between counsel and court; plaintiff's counsel claiming the witness was unwilling. Defendants' counsel said, "You will get the truth." Plaintiff's counsel replied, "If I do get the truth from him, it will be the first time I ever got the truth out of him." An exception was taken. This case was being strenuously contested. The remark was somewhat hasty and inconsiderate; the situation, being the usual one where an opposite party is called as a witness, was somewhat irritating. From a reading of the entire testimony of this defendant, it may be fairly inferred that the remark was not entirely unprovoked. It cannot, however, be considered as prejudicial error.

In his argument to the jury, plaintiff's counsel referred to the fact that defendant Moore had not been served with process, and that he appeared and joined issue in combination with the other appellants. He called attention to the fact that they had joined hands in their defense, and then proceeded, as an excerpt from his argument shows, to answer an argument made by counsel for appellants relative to lack of motive on the part of the other appellants to do such a thing, and proceeded to give his views of the evidence bearing upon that proposition. Both the statement and argument were warranted, and no error was committed.

At the close of plaintiff's case appellants made a motion for a directed verdict in behalf of all the defendants who appeared in the case, on the ground that there was no evidence in the case to connect any of these defendants with the fraud perpetrated by defendant Andre. This motion was denied, and defendants rested their case. Error is assigned upon the denial of this motion.

This requires a consideration of all the evidence introduced in the case on the part of the plaintiff, and

all legitimate inferences which may be drawn from it. From a careful reading of the entire record, we are satisfied that in so far as defendant Moore is concerned the motion was properly denied. That a scheme was devised by defendant Andre to obtain butter and eggs fraudulently from those of the public in general who would deal with him, without intending to pay for such merchandise, that he did fraudulently obtain from the plaintiff and his assignors, respectively, the amounts shown by the record, is beyond dispute; and it may also be said that, while the connection and relation of defendant Moore in conspiring, assisting, and taking part in such scheme to deceive and defraud the public was a question to be submitted to the jury, there was abundant evidence in the case to warrant the verdict holding this defendant liable as a party to such deception and fraud. The record shows, without dispute, that all of the active officers of defendant bank, who are defendants in this case, had personal knowledge of the fact that defendant Andre, from the time of the organization of the bank in 1905 up to April, 1906, when he formulated this fraudulent scheme, was financially irresponsible. He was personally indebted to each of such officers of the bank, and his paper was refused by the discount committee of its directors.

Upon the theory, we must presume, that the record contains no other evidence tending to connect appellants with this fraudulent scheme, it is contended on the part of appellants that there could be no liability against the bank or the other appellants by reason of the letters sent out in answer to inquiries, in that they had not been officially authorized and contained no false statements. In this it is apparent that appellants misconceive the nature of the action against them. It is not based upon liability arising from false representations made relative to financial standing;

but such proof was introduced upon the theory that it was material as bearing upon the part defendants, or any of them, took by concerted action in assisting and taking part and in the perpetration of the fraud. The outline of the facts and the claim of plaintiff already given indicate somewhat the evidence relied upon by plaintiff, and to state in detail the proofs in the case which plaintiff claims tended to show that the appellants actively engaged in the scheme to defraud would be of no benefit. It is undisputed that the reference to the bank given by Andre on cards bidding for produce was allowed to stand; that the officers of the bank asked for a financial statement from Andre; that they received one known by them to be untrue; and that the president of the bank formulated the letter which was sent out based upon that statement. There is also testimony in the case other than the knowledge defendants had tending to show that this statement was not true. In determining the character of the acts of these defendants as showing their concerted action in conspiring and taking part in such scheme, all of the proofs in relation thereto must be taken and considered as a whole, and are matters to be passed upon by a jury. Fraud is seldom capable of direct proof. It must be established by facts and circumstances taken together, and all the legitimate inferences to be drawn therefrom. In the instant case, considering all the testimony bearing upon the connection of these appellants with the transaction, our conclusion is that the court was not in error in refusing to direct a verdict for defendants.

The errors assigned upon the refusal of the court to give defendants' request to charge do not require discussion. For the most part they were repetition of contentions made during the trial which have already been passed upon. Such of them as were proper to be given were included by the court in his general charge to the jury.

Errors are assigned, also, upon certain portions of the charge as given which embrace ten paragraphs of considerable length taken from the charge. Our examination of these excerpts satisfies us that in each instruction the court correctly instructed the jury, and to restate and discuss these propositions would be of no benefit.

Another statement in the charge is complained of as erroneous. It was given before the court began to instruct the jury as to the law of the case, and while the facts were being stated; the court saying:

"You will understand that Mr. Scofield represents himself and represents a number of other creditors of William Andre who were caught in an egg deal through William Andre, and for which he was convicted here in this court, and sent to prison, and they have assigned their claims to Mr. Scofield."

It is contended that there was no evidence in the case that Andre had been convicted, and that the statement was highly prejudicial. The record shows no evidence of Andre's conviction; but it did appear during the examination of Moore that Andre had been criminally prosecuted, and that Moore had been a witness upon his trial. It also appeared that Andre, on or about June 16th, when his scheme became public, had left the country. That his prosecution and conviction was a matter of general notoriety and common knowledge in that county cannot be doubted. It was a matter of record in that court, and no claim is made that the reference by the court was intended to prejudice these defendants. We do not think that the remark constituted prejudicial error.

The remaining assignment of error is upon the refusal of the court to grant a new trial principally on the ground that the verdict in the case was against the weight of the evidence. From our conclusions already stated, it is apparent that in our opinion the court was not in error in submitting the case to the considera-

tion of the jury; therefore the denial of this motion for a new trial was not erroneous. We find no reversible error in the case.

The judgment of the circuit court should be affirmed.

BIRD and MOORE, JJ., concurred with MCALVAY, C. J.

OSTRANDER, J. At the trial the attorney for the plaintiff made an opening statement to the jury, and called a witness, who was sworn, when the attorney for the defendants other than William Andre objected to the giving of any testimony, upon the ground that the declaration stated no cause of action as against those defendants. Thereupon the attorney for the plaintiff said:

"Our case is based upon the theory, if the court please, that my client and his assignors have been cheated, wronged, and defrauded because of a scheme on the part of William Andre to get possession of their produce, and not pay for it; that, under the law of the State of Michigan, is a fraud, and that states a cause of action. If there is any doubt about it, I wish to call the court's attention to a very late case in Michigan, I think in [*Longo* v. *Crachiola*] 165 Mich. 509 [131 N. W. 97]. What is our claim against the remaining defendants? We claim that they are equally responsible with William Andre, because they conspired with him to do it, and give him the aid and assistance in carrying it out. I claim, if the court please, and I know the rule to be, that a pleading is not required to set out our evidence, as it would be poor pleading to set out our evidence. We set up the fraud of Andre, and the co-operation with him of these parties by lending their aid and assistance, and, if we can prove it, we are entitled to recover. I wish to call the court's attention to this further fact that, as to these defendants for which my brother appears, there has been pleaded simply the general issue, that and that alone. If, as they claim, this declaration does not set out a cause of action as

against their clients, they should have filed a demurrer, and so held, if I remember the case, in the case of *McDonald* v. *Smith*, 139 Mich. 211 [102 N. W. 668]."

The ruling of the court was:

"That the record may be made, I will overrule the objection. You may proceed with the witness, and I will give it further consideration."

It does not appear that an exception was taken. The testimony on the part of the plaintiff having been concluded, counsel for the defendants other than Andre said, among other things:

"It may be true that the first count of the declaration states a cause of action against Mr. Andre, but we are not appearing for him; but it does not or none of them state a good cause of action against the other defendants. It seems to me there cannot be any question in this case but what he should elect under which one of the counts he claims he is entitled to go to the jury on."

The motion to compel plaintiff to elect upon which count he would go to the jury was overruled. Thereupon counsel for the defendants other than Andre moved the court to direct a verdict in favor of the Grand Ledge State Bank, Mr. Clarke, Mr. Latting, and Mr. Moore, for the reason that the declaration does not set up a cause of action against any one of them, and for the further reason that no conspiracy or combination had been proven, and no testimony introduced tending to show that the plaintiff or any of his assignors relied upon any statement made by or for any of the defendants other than Andre. The motion was overruled, and an exception to the ruling was taken. A witness for plaintiff was permitted, over objection and exception, to testify in substance that upon an occasion earlier than the time when defendant Andre established certain relations with the Grand Ledge State Bank, and earlier than the time when it is al-

leged he conspired with the other defendants, he (Andre) made a proposition to the witness, who was an officer of another bank in the same community:

"That we should help him to establish a credit, and use the bank as reference, and that he would buy eggs during the case count season or up until the 15th of May, and as fast as he could get a car load accumulated he would consign them to New York, with bill of lading attached, and turn the bill of lading on it, and give him credit again on that bill of lading, and buy another car load, and that as the season neared the end he would spring the price, having paid for all previous eggs, and having a certain line of credit established. He would then spring the price half a cent or a cent as necessary, getting a large amount of eggs, consign them to New York, and get the money, and not deposit, so that the checks would go to protest. In that way he would make money enough to redeem the property, pay us the nine thousand and some odd dollars that was owing to the bank, and settle with the creditors at a small percentage, and save enough to redeem his property and put him on his feet. And that—we turned the proposition down, told him we could not do it.

"*Q.* I will ask you if he offered any additional inducement—bonus without the payment of the debt?

"*A.* Well, not to the bank directly.

"*Q.* Did he make any offers to any one in your presence?

"*A.* He offered Mr. Alexander after we turned the proposition down the first or second time in the previous interview when he tried to persuade us to do this—

"*Q.* (By Mr. Walbridge). Was that in your presence?

"*A.* Yes; that he would give Mr. Alexander $2,000 and finally raised to $2,500 if he would assist him."

When this testimony was first offered, the witness was withdrawn upon the suggestion of the court that the order of proof was important, and that some testimony tending to prove a conspiracy or combination between the defendants should be offered, whereupon

counsel for the plaintiff withdrew the witness.   There-
after some other testimony was introduced relating
to the conduct of the defendant Moore, and tending
to connect defendant·Moore and the defendant Andre,
after which the testimony referred to was introduced.
The court was requested to charge the jury:

"I further charge you that you cannot use the testi-
mony given by Mr. Briggs and Mr. Alexander as to
a proposition made to them by Mr. Andre as evidence
tending to show a wrong  on the part of the Grand
Ledge State Bank, or Mr. Clarke or Mr. Latting, for
the reason that this record fails to show that they ever
had any knowledge or notice of the facts given by
those two witnesses; therefore the bank cannot be
held responsible and neither can Mr. Latting or Mr.
Clarke be held responsible for said statements, and
this should not and must not be used against them in
any way."

And upon this point the court charged the jury sub-
stantially as so requested.   A verdict against defend-
ant Andre was directed.   The court was further re-
quested to charge:

"I further charge you that you cannot, as against
the defendants the Grand Ledge State Bank, William
R. Clarke, and Raymond A. Latting, use or consider
the letters, Exhibits B, C, D, E, F, and G, written
by defendant Bert R. Moore to Ralph· Nixon, and per-
taining to the personal matters of  the said Bert R.
Moore, for the reason that the undisputed proof in
this case is that said letters were never brought to
the knowledge of the defendants above named."

The court, upon this subject, charged the jury as
follows:

"I instruct you further that, if you find the letters,
Exhibits B, C, D, E, F, and G, written by Moore to
Ralph Nixon, who was at Linden as I recall it, per-
tained to the personal matters of said Moore, and were
not brought to the knowledge of the officers of the
bank other than its cashier, said Moore, they cannot
be used as evidence against the bank, nor can these

letters be used against defendants Clarke or Latting, unless you are satisfied from the proof in the case that they knew they were being written, and what they contained at the time of the writing."

A motion for a new trial was denied, and the ruling duly excepted to. · The objections and exceptions which have been referred to raise the principal questions in this cause.

The declaration alleges that defendant Andre, engaged in the business of buying, selling, and shipping butter and eggs and other farm produce in April, 1906, was in embarrassed financial circumstances, and without credit, and without means with which to carry on said business; that said Andre and defendants Clarke, Latting, Moore, and the Grand Ledge State Bank—

"All conspired together and entered into a scheme and plan to cheat and defraud the general public, and especially said George J. Scofield, the plaintiff herein, and his said assignors, by a fraudulent, illegal, and wicked scheme and plan, in substance and effect as follows: Said William Andre, with the aid and assistance and co-operation of the said William R. Clarke, Raymond A. Latting, Bert R. Moore, and the said Grand Ledge State Bank, was to purchase and secure possession of large quantities of butter and eggs from the general public, and from the said George J. Scofield and his said assignors, and never pay for the same; that, in pursuance of said fraudulent conspiracy, scheme, and plan so made and entered into, the said William R. Clarke, Raymond A. Latting, Bert R. Moore, and the Grand Ledge State Bank did aid and assist said William Andre to carry out said plan and scheme, and the said William Andre, with the aid and co-operation of said William R. Clarke, Raymond A. Latting, Bert R. Moore, and the Grand Ledge State Bank, in pursuance of said fraudulent conspiracy, plan, and scheme, and intending with the said William R. Clarke, Raymond A. Latting, Bert R. Moore, and the Grand Ledge State Bank to cheat, deceive, and defraud the general public and said George J. Scofield and his said assignors, did pur-

chase on credit, and without intending to pay for the same, and secure possession of a large quantity of butter and eggs, to wit: * * * And the said William Andre, William R. Clarke, Raymond A. Latting, Bert R. Moore, and the Grand Ledge State Bank not then and there intending to pay for the same, but intending to wickedly and fraudulently cheat said George J. Scofield and his said assignors out of the value of said butter and eggs, and the said plaintiff alleges and avers that, by reason of such fraudulent conspiracy, scheme, and plan on the part of the said William Andre, William R. Clarke, Bert R. Moore, Raymond A. Latting, and the Grand Ledge State Bank and the sale and delivery of said butter and eggs as aforesaia, said defendants William Andre, William R. Clarke, Raymond A. Latting, Bert R. Moore, and the Grand Ledge State Bank became and were indebted to the said George J. Scofield and his said assignors in and for the price and value of said butter and eggs so sold and delivered as aforesaid. And being so indebted did then and there undertake and promise to pay said sums of money, to wit, the sum of $10,000."

There are other counts in the declaration, but in none of which is the alleged conspiracy and alleged general scheme and plan more particularly stated, and in none of which is it alleged what the defendants agreed and conspired to do, nor is it alleged what any of the defendants other than Andre did, or attempted to do, in concert or otherwise, to accomplish the alleged fraudulent purpose and design. The last count alleges that defendant Andre, using the name Grand Ledge Cold Storage Company, applied to plaintiff and his assignors to sell to him certain goods, etc., and did sell and deliver to him certain goods, etc.; that plaintiff and his said assignors have been informed that the name the Grand Ledge Cold Storage Company was adopted by all of the defendants for the fraudulent purpose of securing said goods without paying for them; and that Andre acted under said

fictitious name with the collusion, knowledge, request, concurrence, etc., of the other defendants for the purpose of securing such goods for their joint use, benefit, and profit, with intent upon the part of all defendants of deceiving and defrauding plaintiff and his assignors.

In alleging fraud, it is well settled, both in law and in equity, that the mere general averment, without setting out the facts upon which the charge is predicated, is insufficient; that, whether fraud be alleged in a declaration, complaint, or bill, or set up by way of defense in the plea, answer, or replication, it is essential that the facts and circumstances which constitute it should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called upon to answer. The reason is that fraud is a conclusion of law from facts stated, and facts, and not legal conclusions, are required to be pleaded. Mere general averments of fraud or the fraudulent conduct of a party, without the facts, do not constitute a statement upon which the court can pronounce judgment. See 9 Enc. Pl. & Prac. pp. 684-690.

It appears to be the contention of the plaintiff, and it is in accord with the reasoning and conclusions of my Brother MCALVAY, that because in the instant case, if suit had been brought against defendant Andre alone, the declaration would have been sufficient to support a judgment against him, it is therefore sufficient to support a judgment against the other defendants, none of whom are alleged to have agreed to do or to have done anything in particular to aid defendant Andre. It is alleged only in the most general way that they conspired together to aid and abet Andre, and that they did aid and abet him, in what is said to have been his nefarious purpose to secure large quantities of produce without paying for it. It is said,

upon authority of *Longo* v. *Crachiola,* 165 Mich. 509 (131 N. W. 97), that the declaration is good as against defendant Andre. In that case the declaration alleged that the defendant purchased fruit of plaintiff with intent not to pay for it, in pursuance of a general scheme to obtain credit from various dealers in the city of Detroit, to buy twice as much fruit as defendant could handle, sell it for less than it cost him, retain the proceeds, and not to pay for any of it. The case is far from being authority for the proposition that, if the declaration had further alleged generally that other defendants conspired with the principal defendant to aid and assist him in his alleged purpose, it would have supported a recovery against those other defendants. Undoubtedly, the allegation of conspiracy does not change the nature of the action, and no one seems to contend that it does, nor is conspiracy the ground of the action. It is the general rule that, in an action on the case (and, in this case, in an action of assumpsit under the statute) in the nature of a conspiracy, the combination or conspiracy is not the gist of the action. An insertion in the declaration of an averment that the acts done were in pursuance of a conspiracy does not change the nature of the action, which remains an action on the case, and is to be tried and determined upon the rules applicable to that form of action. The point is that the declaration as to the appealing defendants does not allege a single issuable fact. Referring again to the governing rule, it finds expression in *Schwab* v. *Mabley,* 47 Mich. 572 (11 N. W. 390), where it is said:

"It is not enough to aver that acts done or intended are unlawful or illegal. The acts complained of must be definitely and issuably shown, so that, if the facts themselves should be admitted, the court can draw legal conclusions."

As has been pointed out, the declaration in the instant case does not inform the appealing defendants

what act of theirs, or of any of them, is intended to be proved as the basis for the conclusion that they were engaged in the fraudulent scheme. Nothing which they said or did is alleged.

In *Pforzheimer* v. *Selkirk*, 71 Mich. 600, 607 (40 N. W. 12), this court said:

"It is not sufficient to charge a person with cheating and defrauding another only, or with contriving and confederating with others to defraud, to make out a case of fraud, but the declaration must definitely and issuably set forth the facts complained of, relied upon for a recovery; and a declaration alleging as the cause of action false statements, where there is more than one defendant, should aver a conspiracy, and enumerate the false statements and the circumstances which are supposed to create the liability, with particularity, and, if not made by all the defendants, it should be averred that they all colluded and conspired together in such manner that the false representations by those who did not participate in making them were authorized by them, and in furtherance of the common design and fraudulent purpose.

"It should also be averred that the false statements were believed to be true by the plaintiffs, and, thus believing, were relied upon by them, and that they induced the action taken by the plaintiffs, which resulted in damage to them."

In *Parker* v. *Armstrong*, 55 Mich. 176, 179 (20 N. W. 892), it was said:

"It will not do in a declaration to aver fraudulent representations, and not aver what they were. The defendant is entitled to know what is relied on, and the plaintiff cannot make vague charges and wait till the trial to inform defendants of them for the first time."

In my opinion, as to all appealing defendants the declaration is fatally defective. As some of my Brethren do not agree with me in this conclusion, I pass to a consideration of the case upon its merits.

It must be admitted that it is not a fraud upon a

vendor to offer or to agree to pay him a little more
than the market price for his wares. It is a moral
wrong for a buyer to secure wares from a vendor for
any price if he does not intend to pay for them. Plain-
tiff is trying, in this case, to collect his pay for goods
sold and delivered to defendant Andre. It is alleged
that he bought them, intending never to pay for them.
To prove this intent, he produces the testimony
already referred to of a witness who says Andre once
made to him the bald proposition to embark in a buy-
ing of goods, bid for them more than the market price,
pay for some, refuse finally to pay, and fail with some
of the proceeds of a resale of the goods in his hands.
As he did later begin buying goods, did bid for them
more than the market price, did pay for some, did de-
fault, it is argued, of course, that his fraudulent pur-
pose, as expressed to the witness, continued and
existed when he bought the goods of plaintiff and his
assignors. Giving the argument its fullest scope and
effect, how are the appealing defendants affected un-
less, first, they knew the purpose, and, second, unless
they connived with and assisted him? In my opinion,
there is no testimony in the record which fairly tends
to prove either the knowledge or connivance of any
defendant except the defendant Moore. Those per-
sons to whom defendant Andre is said to have com-
municated his fraudulent purpose did not advise any
of the defendants thereof. Andre, whether he had or
had not theretofore been a successful business man,
was still a business man in Grand Ledge. His busi-
ness was the buying and selling of butter and eggs.
He opened an account with the defendant bank, with
a considerable cash deposit, some $2,000, at the sea-
son of the year when activity begins in this latitude
in his business. He arranged with the cashier to as-
sist him beyond his apparent capital by advancing
money from time to time, secured by bills of lading

of the produce already purchased and shipped, to the amount of 75 per cent. of the value as called for in the bills of lading. That is to say, having bought a car load of produce and shipped it to the East for sale, he produced to the bank a bill of lading thereof, upon which the bank credited his account 75 per cent. of the value of the produce. There is no testimony tending to prove that the bank ever exceeded this ratio of advancement or credit; there is testimony tending to prove that the president of the bank, after a time, advised the cashier that he thought too large a proportion of the value of the goods was being credited to Andre, and that the cashier acted upon the advice of the president. This advice of Clarke is regarded by counsel for plaintiff as some evidence of Clarke's guilty knowledge; his argument being that, if Clarke thought Andre was doing an honest business, there was no reason for making the objection. The bank paid Andre's checks given for the produce he purchased so long as he had a credit balance at the bank. The testimony strongly tends to prove that the cashier had knowledge of the fraudulent purpose of Andre, took advantage of the situation and his knowledge, and profited by securing from Andre payment in part of a private demand he held against him. But the business transacted at the bank by Andre was no evidence of a fraudulent purpose, and certainly none that the other defendants were cognizant of such a purpose. It is matter of common knowledge that banks do, in just such a manner, assist customers. At some time Andre, who purchased goods at a considerable distance from Grand Ledge, and from persons who had stocks of butter and eggs, had printed upon the stationery he sent out with his offers to buy a reference to the defendant bank and to others, or another. This he did without securing or asking for permission from the bank. This came to the knowledge of some

of the officials of the bank, and some inquiries were received concerning the financial responsibility of the Grand Ledge Cold Storage Company. Andre was asked to furnish to the bank a statement of his affairs. He did so. The statement was untrue, because it concealed the fact that his real property was held by him upon a contract to purchase it, and because, probably, he overvalued it. A form of letter to be used with the bank stationery was prepared by defendant Clarke, the president of the bank, and was afterwards used to some extent in answering inquiries concerning the Grand Ledge Cold Storage Company. It was in the following form:

"In reply to your inquiry of the Grand Ledge Cold Storage Company, would say that these people opened an account here about six weeks ago. Since which time their balance has run from $2,000 to $4,000. Beyond this fact, we have very little definite knowledge of their financial ability. They make statement to us showing real estate which they valued at $20,000. Incumbrance $11,600, personal property, consisting of egg crates, chicken coops, horses, wagons, fixtures, on which they place a value of $2,500, leaving net worth, according to their statement, of $18,900. As to who constitutes the company beyond the manager, they do not state, and we do not know.

"William Andre, the manager, is a great hustler, and under proper conditions we think will make money for his company in the poultry and egg business.

"Yours truly."

I am considering these matters now as having, or not having, a tendency to prove a conspiracy, and as evidence of defendants' knowledge of Andre's evil purpose, and not as acts or representations of other defendants relied upon by plaintiff or his assignors. It is said that Andre owed Clarke, or a mercantile concern with which he was connected, and the account was long overdue, and had not been and could not be collected. It is pointed out that when defendant bank was established it succeeded a private bank which held

dishonored notes made by Andre, and that, in taking over the assets of the private bank, such notes were not included. But, if we eliminate knowledge on the part of the officers of the bank of the alleged evil purpose of Andre, what the bank did has no sinister meaning. Andre had become a patron of the bank, and was embarked in business. Many men do that who have been unable to pay all their debts, and sometimes they succeed and pay their debts. Their accounts are not usually refused because they owe a director of the bank a debt, or because they have suffered commercial reverses. The facts stated by the bank in the letter it sent out were true, substantially. The facts represented by Andre to be true were untrue in this, that neither he nor the Grand Ledge Cold Storage Company owned the property valued at $20,000 ($25,000?), but, as has been stated, held it on land contract by which they, or he, must pay $11,600, and interest, to secure a deed thereof, and the valuation was undoubtedly too high. I shall assume that the officers of the bank who knew anything about the preparation and use of the letter knew that the property was overvalued, and knew, also, that Andre owed various overdue debts. Still, it seems to me, this has no reasonable tendency to prove that these officers knew of Andre's evil purpose, or that the corporation was engaged in a conspiracy to defraud. The bank was doing considerable business with him, having the security already described. It is to be presumed that the bills of lading negotiated with the bank, against which drafts were drawn, produced the money, and that the goods were sold for more than they cost. There is nothing to indicate that there had not been at all times funds to the credit of Andre to pay the checks which he drew upon the bank. It appears that finally a large consignment of produce was not paid for by the purchaser, and, while the details of the

controversy do not appear, it seems evident that, if the money, some $17,000, had been paid, Andre's checks would not have gone to protest as they did on May 16th. As it was, although by a check of the Grand Ledge Cold Storage Company Andre paid a mortgage of more than $500, which a relative had given for his benefit, and paid certain moneys to defendant Moore, his estate paid his creditors, old and new, 33 cents on the dollar in bankruptcy proceedings. The total of debts proved in bankruptcy was about $48,000, of which $26,000 or $27,000 was for new debts. Something over $19,000 in assets came into the hands of the trustee in bankruptcy, most of it, apparently, proceeds of the new business. It is possible that Andre intended to so manipulate affairs that he would secure these assets, or others, and refuse to pay his creditors. So far there is no evidence that Clarke or Latting, or the bank, knew that such was his purpose. It is pointed out, also, that upon the refusal of the before-mentioned eastern consignee to pay for produce shipped to him, Latting, an attorney at law and a partner in the law business with Mr. Clarke, was employed by Andre to secure collection of the demand, and that Mr. Clarke also interested himself in the matter. I do not understand from the record that either did anything improper. If we once assume that neither had knowledge of Andre's ultimate evil purpose, their acts appear innocent.

The mortgage paid by Andre, as above stated, was held by Mr. Latting. No one questions the validity of the mortgage. But because it was paid by Andre, for whose benefit his relative gave it, with a check of the Grand Ledge Cold Storage Company, it is argued that Mr. Latting profited by Andre's fraud, or was a party to Andre's fraudulent purpose. The money was due to Mr. Latting, and it was Andre's duty to pay it. He did pay it out of a fund apparently embarked in a going and profitable business.

There is no testimony tending to prove that Moore, the cashier of the bank, ever communicated to any one interested in the bank his knowledge or suspicion that Andre was dishonest, or that he (Moore) was receiving from Andre money or promises of money. There were nine directors of the defendant bank, four of whom, including the cashier, knew something about Andre's dealings with the bank, and about the letter sent out by the bank in answer to inquiries about the Grand Ledge Cold Storage Company. And the bank is held liable in this case to pay a judgment of nearly $6,000 to creditors of Andre. Against none of the appealing defendants can such a judgment be sustained according to any theory of fraudulent representations or acts of the bank or its officers relied on by plaintiff or his assignors, because it appears that but few, if any, of plaintiff's assignors made inquiry of or received the letter from the bank relating to the standing of the Grand Ledge Cold Storage Company. The judgment must be based, then, upon the theory that the bank and the other appealing defendants were parties to Andre's evil purpose, and that all that they did, in extending him accommodations and otherwise, was in aid of that purpose. This conclusion the testimony is wholly insufficient to sustain. As the case was tried, the questions herein discussed were undoubtedly questions for the jury, if there was any testimony connecting the appealing defendants other than Moore with the fraudulent purpose of Andre. Many things occurred to prejudice the rights of these defendants other than Moore. Some of them have been referred to.

In the argument made by plaintiff's attorney to the jury, he said:

"Bert Moore never was served with process at all, which is a significant fact in this case."

Again he said:

"The record in this case shows and the pleadings show that man's [Mr. Moore's] appearance was entered here in combination with the Grand Ledge State Bank, Raymond A. Latting, and W. R. Clarke by one and the same attorneys."

Upon objection, the judge stated he would not interfere. Counsel for plaintiff then proceeded:

"Now, gentlemen of the jury, I wonder why it was that those men, Raymond A. Latting, Will R. Clarke, and this corporation, the Grand Ledge State Bank, joined hands with Bert R. Moore to fight this case."

Clearly, here was a case of making evidence of a fraudulent participation in the scheme by the defendants other than Moore out of matter not offered upon the trial as evidence of guilt, and not, in fact or in law, tending to prove guilt. The court should have interfered.

It is not necessary to notice other alleged errors. The judgment as against defendants Clarke, Latting, and the Grand Ledge State Bank should, in any event, be reversed, and a new trial granted. In my opinion, the judgment against all defendants, excepting Andre, should be vacated, and no new trial granted, because the declaration will not support a judgment.

STONE, J., concurred with OSTRANDER, J.

BROOKE, J. I concur in a reversal, but believe the declaration is good, or at least amendable.

STEERE, J., concurred with BROOKE, J.