## ROBERTS *v.* FOX.

1. CONSPIRACY—EVIDENCE.

   In action by person who had been charged with arson in a cause dismissed by circuit court because testimony taken before examining magistrate was insufficient to establish a *prima facie* case against four defendants for conspiracy re-

sulting in publication of a libelous article, evidence failed to sustain allegations of a conspiracy (Act No. 328, § 75, Pub. Acts 1931).

2. SAME—EVIDENCE—PARTIES.

Recovery may not be had from any of the defendants charged with conspiracy in the commission of several torts by the different defendants where there is a failure to prove the conspiracy charged although the damage sustained may have been the final result of the various torts operating together.

3. PARTIES—TORTFEASORS—SEPARATE ACTIONS.

When one is injured by separate and distinct torts of different persons, recovery from such persons must be sought in separate actions.

4. SAME—JUDICATURE ACT—CAUSES OF ACTION—JOINDER.

The judicature act does not permit a joinder of parties severally liable and a joinder of different causes of action, each against a different defendant (3 Comp. Laws 1929, §§ 13962, 14021, 14023).

5. ACTION—CONSPIRACY—SLANDER—FALSE IMPRISONMENT—LIBEL— EVIDENCE—JOINDER.

Joinder in one cause of action for conspiracy of two defendants charged with slander, a third defendant with slander, false imprisonment and malicious prosecution, and a fourth defendant with publication of a libel was, where the conspiracy was not proved, not only unnecessary to promote the convenient administration of justice but highly prejudicial to the publisher, the most financially responsible defendant (3 Comp. Laws 1929, §§ 13962, 14021, 14023).

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 16, 1943. (Docket No. 51, Calendar No. 42,356.) Decided September 7, 1943. Rehearing denied October 15, 1943.

Case by William E. Roberts against George W. Fox and others for conspiracy to commit several torts. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Fred P. Geib* (*Clem H. Block,* of counsel), for plaintiff.

*Roger I. Wykes* (*Wykes & Porter,* of counsel), for defendants Fox.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Harry W. Jackson* and *Daniel P. O'Hara,* Assistants Attorney General, for defendant Dean.

*McCobb & Heaney* (*Robert S. Miller,* of counsel), for defendant Booth Newspapers, Inc.

CHANDLER, J. Plaintiff for a number of years was the owner under a land contract of certain premises located in Kent county, Michigan, on which was located a residence, two garages, a shed, and a workshop used by him in the manufacture of wire poultry equipment. In 1940, defendants Fox became tenants under plaintiff of these premises, plaintiff retaining the use of the shop to carry on his business. On May 17, 1941, he entered into a contract of sale of part of the premises to the Foxes. At that time, it was agreed that plaintiff should retain the use of the shop until he could find a place to move his manufacturing business.

It appears that some time after the execution of the contract, plaintiff and Mr. Fox had some argument concerning the status of the taxes on the property at the time the contract was executed, and that the Foxes thereafter had a hostile attitude toward him which he claims has a bearing on subsequent events hereinafter related.

On June 24, 1941, while plaintiff and his son were working in the shop, they discovered a grass fire outside and that the west wall of the shop was also burning. The fire department was called and the blaze extinguished with an estimated loss of $80 which was paid by the insurance company carrying the risk.

On June 27, 1941, another grass fire occurred, which was extinguished without loss to any of the buildings. About this time, the Foxes decided that the fires should be investigated and on July 5, 1941, called the sheriff's department which advised that if they desired such an investigation they should contact the Rockford post of the State police.

On July 10, 1941, a third fire occurred in the shop while neither the Foxes or plaintiff were on the premises, for which plaintiff's claim in the amount of $1,500 was subsequently paid by the insurance company, but not until after the investigation and other events of which plaintiff complains took place. After this fire, the Foxes insisted an investigation be made and defendant, Sergeant Dean of the Rockford post of the State police, an arson expert, was assigned thereto.

Dean arrived and proceeded with his investigation, instructing the insurance company not to pay the loss claimed because of such investigation. He also requested assistance from the insurance company which in compliance therewith sent a Pinkerton detective to the scene.

During the course of the investigation, plaintiff submitted to a polygraph examination and was advised that the results of the test were unfavorable to him. Conferences were held between the interested parties in the office of the assistant prosecuting attorney of Kent county, and as a result of all these events, plaintiff was arrested on a warrant issued on a complaint signed by defendant Dean charging a violation of Act No. 328, § 75, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-75, Stat. Ann. § 28.270). Upon arraignment, he demanded an examination and was released on bail.

Reporters of the Grand Rapids Press, a newspaper published and circulated by defendant, Booth Newspapers, Inc., had become apprised of the pro-

ceedings, and upon his arrest plaintiff immediately contacted said newspaper and requested them not to print a story as the charge was a "frame up." When released on bail, he went to the offices of the newspaper and again repeated his request to responsible officials of the paper, but was told that a story would be printed and that if he was not guilty he would have ample opportunity to establish his innocence in court. As a result, the Grand Rapids Press published the following item in its editions for August 15, 1941:

"ARSON CHARGE HEARING ASKED.
William Roberts Denies He Set Two Fires in Warehouse.

"Accused of arson, William E. Roberts, 52, manufacturer of welded wire poultry farm equipment and resident at 2131 Jefferson-dr., S.E., demanded examination Friday afternoon when arraigned before Justice John C. Loucks.

"Roberts was ordered to post bonds of $1,000 and the hearing was set for Aug. 22. He was accompanied in court by Attorney Fred P. Geib. Complaint was made by Quentin Dean of the State Police.

"Reports Oil in Walls

"Arnold R. Levandoski, assistant prosecutor, alleges in the warrant that Roberts on June 24, kindled a fire in a frame warehouse, formerly owned by him and more recently rented by him, and collected $80 in insurance. Dean said traces of fuel oil were found between the inner and outer walls of the warehouse at 100 Wilder-rd., S.W.

"The warehouse is at the rear of the lot and is 14 x 80 feet in area. Dean said the insurance company paid the June loss claimed by Roberts. On July 10, Dean reported, another fire broke out in the warehouse and Roberts subsequently claimed a loss of $2,369.67 on the contents owned by him. This claim was not paid.

"In the second fire, Dean asserted, lacquer and fuel oil were poured on wooden egg crates. The property is owned by George W. Fox. Dean said Fox had no connection with either fire. Roberts has denied any responsibility, Levandoski said.

"Roberts at one time was widely known as a butter and egg wholesaler and in recent years has engaged in the manufacture of wire accessories for poultry farms."

At the examination, plaintiff was bound over to the circuit court for trial. On October 21, 1941, the cause was dismissed on motion on the ground that the testimony taken before the examining magistrate was insufficient to establish a *prima facie* case.

The foregoing does not purport to state in detail all the facts relied upon by plaintiff in support of his claim, such a statement being unnecessary to this opinion, but is intended to give a substantial general outline of the facts which resulted in this proceeding.

Plaintiff instituted this action, seeking damages for the alleged wrongful acts of defendants. The declaration alleged a conspiracy between Mr. and Mrs. Fox to illegally cause his arrest and to injure plaintiff by falsely publishing and asserting that he was a criminal; a conspiracy between the Foxes and defendant Dean to cause the false arrest of plaintiff and the dissemination of information that plaintiff was a criminal for the purpose of ruining his reputation, and that as a result of said conspiracy between the Foxes and Dean, he was falsely arrested; that in pursuance of said conspiracy the Grand Rapids Press published the article, heretofore mentioned, which falsely and maliciously charged him with a crime; and that as a result of said conspiracy to which the publishers of said newspaper were parties, and the acts done pursuant thereto, he sustained great damage.

At the close of plaintiff's proof, the trial court granted the respective motions for defendants for directed verdict on the ground that there had been a misjoinder of parties defendant.

As before stated, we have not attempted to reiterate the mass of detailed testimony produced by plaintiff in presentation of his case which occupies more than 500 pages of the record. It is to be noted that the declaration charges several torts against the defendants, all alleged to have been committed in pursuance of a conspiracy between them to ruin his reputation. A reading of the record, however, discloses that he failed to sustain his allegations of a conspiracy. Thus it appears that the declaration charges several distinct torts against different defendants. It charges the Foxes with slander, Dean with slander, false imprisonment and malicious prosecution, and The Grand Rapids Press with publication of a libel.

Plaintiff cites authorities to the effect that where a conspiracy is charged, but not proven, recovery can nevertheless be had against the defendants committing the alleged tort, and the allegations of a conspiracy disregarded as surplusage. See *Hamilton* v. *Smith,* 39 Mich. 222; *Scofield* v. *Clarke,* 179 Mich. 681; *Auto Workers' Temple Ass'n* v. *Janson,* 227 Mich. 430. In all these cases, however, the defendants united in the commission of a single tort. In the instant case, various torts are charged against different defendants. Although the damage sustained may have been the final result of the various torts operating together, in 39 Am. Jur. p. 911, it is said:

"While the injured person may at his election sue joint tortfeasors jointly or severally, he must as a general rule when injured by the separate and distinct torts of different persons sue such persons

separately. One cannot, as a general rule, join independent tortfeasors as codefendants in a single action. Stated differently, one cannot, as a general rule in an action at law for damages, sue several tortfeasors jointly when each acted independently of the others, and there was no concert or unity of design among them, even though their torts may have been precisely similar in character.''

And the same authority, on page 913, states:

''Most courts regard the rules as to the joinder of parties and causes of action as not sufficiently flexible to permit the trial in one action of claims against persons who are concurrently liable each to the extent to which he may have occasioned the damage sustained, as in the case of simultaneous or successive injuries, or against persons one of whom may be liable for the damage sustained, or against persons one of whom must be responsible for the damage sustained if the other is not. Under this rule, the plaintiff cannot, in the same action, prosecute two or more defendants for distinct torts which were committed by the different defendants independent of and not in connection with each other, although the consequences of the tort which was committed by one defendant united with the consequences of the tort committed by the other, because in such case the one defendant cannot be made liable for the consequences of the tort of the other.''

Plaintiff also cites the statutory provision relative to the joinder of parties. See 3 Comp. Laws 1929, §§ 13962, 14021, 14023 (Stat. Ann. §§ 27.591, 27.665, 27.667).

Speaking of the statutory provisions, this court, in *Otto* v. *Village of Highland Park,* 204 Mich. 74, said:

''While its provisions as to joinder of actions and parties are broad in terms and go far beyond the former settled practice, it is inferable from the general tenor of the judicature act considered in its

entirety and, we think, from the very language under consideration relative to parties defendant, that it was not the legislative intent to ignore the fundamental principles of procedure to the extent proposed in this declaration where, as plaintiffs sound their counts, it is sought to join in a single action and have determined the liability of alleged independent tortfeasors for different and distinct torts charged to each, without concert of action or community of responsibility, inevitably amounting to both a joinder of parties severally liable and a joinder of different causes of action, each against a different defendant.''

See, also, *Runciman* v. *Brown,* 223 Mich. 298; *Coke* v. *Brunswicke-Balke-Collender Co.,* 270 Mich. 233.

We believe the authorities clearly sustain the ruling of the trial court that there had been a misjoinder of parties defendant. Plaintiff attempted to combine in one action suits for separate torts committed by different individual defendants. Nothing is present which would indicate that the uniting of these causes of action was necessary ''to promote the convenient administration of justice.'' On the contrary, it would have been highly prejudicial, particularly to the defendant newspaper, the most financially responsible defendant, to have permitted the jury to attempt to sift the confusing issues and assess the damages to the party or parties responsible for plaintiff's alleged injury.

The judgment is affirmed, with costs to appellees.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.