SILKWORTH v. LOCAL NO. 575 OF THE AMERICAN
FEDERATION OF LABOR.

1. APPEAL AND ERROR—INJUNCTION—PICKETING—DE NOVO REVIEW.
    A suit by employers to enjoin labor union from picketing and
    interfering with plaintiff's business, being a chancery case,
    is reviewed *de novo* by the Supreme Court.

2. INJUNCTION—LABOR UNIONS—PICKETING—STATUTES.
    The statute relating to mediation of labor disputes is not in-
    volved in suit by partner employers to enjoin picketing and
    interference with plaintiffs' business by labor union where
    plaintiffs' employees were not members of defendant union
    and there was no labor dispute existing between plaintiffs
    and their employees (Act No. 176, Pub. Acts 1939).

3. CONSTITUTIONAL LAW—PEACEFUL PICKETING—FREE SPEECH.
    Peaceful picketing is a proper means of exercising the right of
    free speech.

4. MASTER AND SERVANT—PEACEFUL PICKETING—LABOR DISPUTE.
    Peaceful picketing by a labor union is a proper means by which
    the facts of a labor dispute may be made known.

5. CONSTITUTIONAL LAW—LIBERTY OF SPEECH AND PRESS—STATE
    ABRIDGMENT.
    The liberty of speech and press is a part of the fundamental
    personal rights and liberties secured from State abridgment
    by the Fourteenth Amendment to the Constitution of the
    United States.

6. SAME—STATE COURTS.
    It is the duty of the State courts as well as the Federal courts
    to guard and enforce every right secured by the Constitution
    of the United States as that Constitution is the supreme
    law of the land (U. S. Const. art. 6, § 2).

7. Master and Servant—Peaceful Picketing by Labor Union—Absence of Dispute Between Employer and Own Employees.

Although there may be no controversy between an employer and his own employees, if the economic interests of other employees engaged in the same industry are affected, they may, through their labor union, publicize their grievance by means of peaceful picketing.

8. Injunction—Labor Objectives—Courts.

If the object sought to be obtained by a labor union through peaceful picketing is not a lawful labor objective, a court would be justified in exercising control of its acts.

9. Same—Peaceful Picketing—Unlawful Labor Objective.

Where the real objective of defendant labor union in picketing plaintiff employers' bulk oil storage plants was to compel them to put their drivers in defendant union by paying their initiation fees regardless of whether or not the drivers wished to join, the use of the lawful means of peaceful picketing was not permissible since the labor objective was not a lawful one.

Appeal from Washtenaw; Sample (George W.), J. Submitted July 19, 1944. (Docket No. 65, Calendar No. 42,617.) Decided October 11, 1944. Rehearing denied December 1, 1944.

Bill by Donald M. Silkworth and another, copartners doing business as D. M. Silkworth Oil Company, against Local No. 575 of the American Federation of Labor and others to restrain interference with plaintiffs' business. Decree for plaintiffs. Defendants appeal. Affirmed.

*John P. Kirk* (*Burke, Burke & Smith,* of counsel), for plaintiffs.

*Fitzgerald, Hogue, O'Leary & Reardon* and *Don Lawrence* (*George Fitzgerald* and *Paul B. Mayrand,* of counsel), for defendants.

Starr, J.   Plaintiffs were engaged in the business of selling gasoline and fuel oil to dealers and con-

sumers in Washtenaw county and adjacent territory. They maintained their office and principal place of business in Ypsilanti and bulk storage plants in Ypsilanti, Ann Arbor, and Dexter. They received their principal supply of such petroleum products from the Gulf Refining Company in Toledo by transport trucks, the drivers of which were union members. Defendant Local No. 575 (herein referred to as the union) was a labor union and a part of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, & Helpers of America, commonly known as the Teamsters Union, which is affiliated with the American Federation of Labor. Defendant Flick was the business representative, and defendant Temple the assistant business representative, of said union, which maintained offices in Ann Arbor and Ypsilanti.

On December 22, 1942, plaintiffs filed bill of complaint alleging, in substance, that there was no labor dispute between them and their truck drivers, who were not union members; that defendants had demanded that they place all their drivers in the union by paying their initiation fees of $27.50 each; and that when they refused to pay such fees, defendants established a picket line at their bulk storage plant in Ypsilanti. A temporary injunction was issued restraining defendants from picketing and from interfering with plaintiffs' business. Defendants answered said bill, denying that they had demanded payment by plaintiffs of union initiation fees for their drivers and that they had unlawfully interfered with plaintiffs' business. Defendants alleged that a labor dispute was involved and that they were legally entitled to picket plaintiffs' storage plant in the furtherance of legitimate union aims and activities. It is admitted that there was no strike, no physical violence, and that the picketing was peaceful.

The matter was brought on for hearing and testimony taken. The trial court held that there was "no bona fide labor dispute existing between plaintiffs and any person or persons or any labor organization of any kind," and that defendants' demand for payment of initiation fees by plaintiffs was "illegal, unjust and extortionate." On April 26, 1943, a decree was entered which enjoined defendants from picketing plaintiffs' places of business and from in any manner interfering with their business or with the delivery to them of petroleum products. Defendants appeal from such decree. This being a chancery case, we review the same *de novo*.

The testimony, much of which is in conflict, reasonably establishes the following facts. Plaintiffs were the largest distributors of petroleum products in Washtenaw county. They owned their trucks and employed eight or more drivers in making deliveries to their customers. In the fall of 1942 defendant union put on a campaign to organize the truck drivers in the petroleum industry in Ypsilanti. Some drivers for the Standard Oil Company and for other distributors in that community joined the union. Defendants Flick and Temple solicited plaintiffs' drivers, but they were not willing to join unless plaintiffs paid their initiation fees. It appears that prior to 1942 two of plaintiffs' drivers had belonged to defendant union and plaintiffs had paid their initiation fees. Defendant Flick testified that at the time of the picketing in question only one of plaintiffs' drivers belonged to the union and that his dues were in arrears. Plaintiffs testified that at such time none of their drivers belonged to the union.

In December, 1942, defendants insisted that plaintiffs place all their drivers in the union by paying their initiation fees, but plaintiffs refused, claiming that their drivers were satisfied and that there was

no labor dispute. About December 20th defendants established a picket line at plaintiffs' Ypsilanti plant. There were only one or two men used in such picket line, and they carried banners which stated, "Unfair to organized labor, A. F. of L." The drivers of transport trucks delivering petroleum products to plaintiffs refused to cross such picket line, with the result that plaintiffs were deprived, at least partially, of their supply of such products. Picketing was continued until December 22d, when plaintiffs filed bill of complaint and the temporary injunction was issued, as above mentioned. To present the situation properly, it is necessary to quote briefly from the testimony. Plaintiff Donald Silkworth testified in part:

"No demands were made * * * regarding labor, working conditions, wages, or anything of that character in December, 1942, and I have no knowledge of any labor dispute. * * *

"I saw Mr. Temple (defendant) on or about December 18, 1942. I had a conversation with him in my office. He asked for a check for $27.50 apiece for each of our employees. * * * He said Mr. Flick (defendant) was waiting at his office for our answer and that if it was not favorable he (Mr. Flick), would stop our supplies from coming into our bulk plants. * * *

"Mr. Temple told me he had not talked with our men lately about joining the union, and that they had made no request to join; he doubted if any of our men would join the union."

Plaintiff Wesley Silkworth testified in part as follows:

"Mr. Temple asked for the initiation fee of $27.50 (in) the local teamsters' union for each of our truck drivers. * * * He said that if the money was not forthcoming they would stop transports from coming into the plant. * * *

"He (Flick) said  *  *  *  as we didn't see fit to play ball with them that they were going to be tough with us, and that we could settle the whole thing for a few dollars and wouldn't have any more trouble about it.  *  *  *

"There was no labor dispute between our firm and our employees at any time.  *  *  *

"I told Mr. Temple in my office that I didn't think the men wanted to belong to the union, and he said he was quite positive that they didn't want to belong to the union. I wouldn't settle with Mr. Flick."

Defendant Temple testified in part as follows:

"*Q.* What was the purpose of the union in signing up these drivers? What is your program?

"*A.*  *  *  *  If we can get them all, we can better working conditions and get them more money.  *  *  *

"*Q.* Tell what the conversation was with Mr. Silkworth.  *  *  *

"*A.*  *  *  *  I told him that I had talked to his drivers and none of them was willing to pay the initiation fee into the union, but they didn't have any objection to going in the union  *  *  *  if the Silkworth Company would pay the initiation fee, and they had done it on previous occasions, so I couldn't see any reason why they wouldn't do it again.  *  *  *  He didn't want to sign them up and  *  *  *  I told him that his trucks were going on union jobs and that the other companies were kicking about it, because a nonunion company was getting union business, and that I wanted his trucks for that reason, too. He said, 'If I was to give you the trucks that are going on the union business, would that be all right?' And I said 'No. I want them all.'  *  *  *

"Donald Silkworth said that he thought four of them would go into the union.  *  *  *

"He asked me what steps we would take if we couldn't get the men and I told him we would use a picket line and that would stop his gasoline.  *  *  *

"I never told the Silkworths we would shut off fuel oil; we told him that fuel oil could go through. We have no desire to stop fuel oil. * * *

"We are only asking for the right to peacefully picket the place of business. We are willing to have the number of pickets designated by the court. * * *

"I made efforts to organize the drivers before talking to Wesley.. I interviewed the drivers without success. I didn't succeed in getting them to join the union. * * *

"Q. So it was your purpose, because you didn't get the $27.50 for each of his drivers, * * * to shut off that supply and you knew that the only way you could do it would be by establishing a picket line? * * *

"A. I didn't do it to get the $27.50. * * *

"If we had the membership, and the $27.50, I wouldn't have been over there as a picket. But if we would have a picket line, the men probably would join without the Silkworths putting up the money. * * *

"Q. You knew you couldn't get it (initiation fee) from the members, didn't you?

"A. No. I could get it from the members, by a picket line."

Defendant Flick testified in part as follows:

"Q. You did contact some of the drivers. * * * And as a result of your contact, you didn't succeed in getting them to join your union, did you?

"A. Well, I never asked them to. I talked to them about it but they said if they could get in * * * and it wouldn't cost them anything, they would gladly join the union. * * *

"I was at the bulk plant December 20th. * * * Mr. Temple and I had arranged to establish a picket line to prove to the public that Silkworths were unfair to organized labor, and settle the labor dispute.

"Q. What labor dispute?

"*A.* Whether we should have all his members or part of them. * * * Some of them would say, 'I have no objection to joining—.' "

There was no showing that plaintiffs had interfered with defendants' efforts to unionize their drivers; and no satisfactory showing that plaintiffs' drivers were willing to join the union even under a check-off system, whereby plaintiffs would pay their initiation fees and deduct the same from their wages. There was no strike and no showing of any argument or dispute between plaintiffs and their drivers over wages, hours of work, collective bargaining or terms and conditions of employment. Only one driver was called as a witness, and he testified in substance that he knew of no dispute between plaintiffs and their drivers, and that he was satisfied with his work and pay.

The question before us is whether or not the trial court was justified in enjoining defendants from picketing plaintiffs' plant. We recognize that this question is of far-reaching and vital importance to the best interests of unions of employees, to employers, and to the general public. *Lafayette Dramatic Productions, Inc.,* v. *Ferentz,* 305 Mich. 193 (145 A. L. R. 1158). It should be noted that no anti-injunction law similar to the Norris-LaGuardia act (47 Stat. at L. 70, chap. 90 [29 USCA, § 101 *et seq.*]) has been adopted by either legislative enactment or judicial decision in this State; also that Act No. 176, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8628–1 *et seq.*, Stat. Ann. 1943 Cum. Supp. § 17.454 [1] *et seq.*), relating to mediation of labor disputes, is not involved in this case.

We recognize that peaceful picketing has been upheld as an exercise of the right of free speech, and that a union may, by the process of peaceful picketing, make known the facts of a labor dispute. In

*Carlson* v. *California,* 310 U. S. 106 (60 Sup. Ct. 746, 84 L. Ed. 1104), the supreme court of the United States said, p. 113:

"Publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth or by banner, must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a State."

In the case of *Book Tower Garage, Inc.,* v. *Local No. 415, International Union, U. A. W. A. (C. I. O.),* 295 Mich. 580, Mr. Justice BUTZEL in the majority opinion said, pp. 586, 587:

"Peaceful picketing is within the right to 'make known the facts of a labor dispute,' and is lawful.

"The liberty of speech and press secured from Federal abridgment by the First Amendment to the Federal Constitution has been carried over and made a part of the fundamental personal rights and liberties secured from State abridgment by the Fourteenth Amendment.    *    *    *    It is the duty of the State courts as well as the courts of the Nation to guard and enforce every right secured by the Federal Constitution. *Robb* v. *Connolly,* 111 U. S. 624 (4 Sup. Ct. 544, 28 L. Ed. 542); *Mooney* v. *Holohan,* 294 U. S. 103 (55 Sup. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406). The Federal Constitution is 'the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.' "

See, also, *Bakery & Pastry Drivers & Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl,* 315 U. S. 769 (62 Sup. Ct. 816, 86 L. Ed. 1178); *Carpenters & Joiners Union of America, Local No. 213,* v. *Ritter's Cafe,* 315 U. S. 722 (62 Sup. Ct. 807, 86 L. Ed. 1143); *American Federation*

*of Labor* v. *Swing,* 312 U. S. 321 (61 Sup. Ct. 568, 85 L. Ed. 855); *Thornhill* v. *Alabama,* 310 U. S. 88 (60 Sup. Ct. 736, 84 L. Ed. 1093); *Senn* v. *Tile Layers Protective Union,* 301 U. S. 468 (57 Sup. Ct. 857, 81 L. Ed. 1229); *People* v. *Bashaw,* 295 Mich. 503.

Defendants contend that a labor dispute existed and that under the Federal and State constitutional guarantees of freedom of speech, they were entitled to picket plaintiffs' plant in a peaceful way. Plaintiffs contend that there was no labor dispute; that the picketing was not in furtherance of a lawful labor objective, but was for the purpose of enforcing an extortionate demand. However, a decision of the question as to whether or not a labor dispute existed between plaintiffs and their employee drivers would not alone determine the question of defendants' right to maintain a picket line. In recent decisions it has been held that although there was no controversy between an employer and his own employees, if the economic interests of other employees engaged in the same industry were affected, they could, through their labor union, publicize their grievance by the means of peaceful picketing. In *Bakery & Pastry Drivers & Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl, supra,* the court said, p. 774:

"One need not be in a 'labor dispute' as defined by State law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive."

In *American Federation of Labor* v. *Swing, supra,* there was no labor dispute or controversy between Swing and his employees, who were not union members. When the union, composed of those engaged in beauty work, was unsuccessful in its attempt to

unionize the workers in Swing's beauty parlor, it picketed his place of business. Swing and his employees began suit and obtained an injunction enjoining such picketing. In upholding the union's right to picket peacefully, the supreme court of the United States said, pp. 325, 326:

"All that we have before us, then, is an instance of 'peaceful persuasion' disentangled from violence and free from 'picketing *en masse* or otherwise conducted' so as to occasion 'imminent and aggravated danger.' *Thornhill* v. *Alabama,* 310 U. S. 88, 105 (60 Sup. Ct. 736, 84 L. Ed. 1093). We are asked to sustain a decree which for purposes of this case asserts as the common law of a State that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

"Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a State has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular State regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the State. *A State cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him.* The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184, 209 (42 Sup. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360). *The right of free*

*communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ.* Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in *Thornhill's Case.* 'Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' *Senn* v. *Tile Layers Protective Union,* 301 U. S. 468, 478 (57 Sup. Ct. 857, 81 L. Ed. 1229).''

See, also, *Cafeteria Employees Union, Local 302,* v. *Angelos,* 320 U. S. 293 (64 Sup. Ct. 126, 88 L. Ed. 58) (decided November 22, 1943), which expressly reaffirms the holding in the *Swing. Case; People* v. *Bashaw, supra.*

While recognizing the right to picket peacefully for the purpose of publicizing the facts of a labor dispute, as established by the above authorities, we also recognize that such picketing may become unlawful if directed to the accomplishment of an unlawful purpose. In *Lafayette Dramatic Productions, Inc.,* v. *Ferentz, supra,* we said, p. 208:

"If the object sought to be obtained by defendants was not a lawful labor objective, the court would be justified in exercising control of their acts."

See, also, *Dorchy* v. *Kansas,* 272 U. S. 306 (47 Sup. Ct. 86, 71 L. Ed. 248) ; *Scavenger Service Corp.* v. *Courtney* (C. C. A.), 85 Fed. (2d) 825; *Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348 (34 N. E. [2d] 349, 136 A. L. R. 267) ; *Fashioncraft, Inc.,* v. *Halpern,* 313 Mass. 385 (48 N. E. [2d] 1),

Therefore, in the present case we must determine whether or not defendants' picketing of plaintiffs' storage plant was for the purpose of obtaining a lawful labor objective. The motive for the picketing, that is, the result sought to be accomplished, was a question of fact. The testimony is convincing that defendants' real objective was to compel plaintiffs to put their drivers in defendant union by paying their initiation fees, regardless of whether or not the drivers wished to join. This was not a lawful labor objective. Defendants could not use the lawful means of peaceful picketing to accomplish such unlawful purpose.

To hold with defendants' contention, under the facts and circumstances shown by the record, would provide a way whereby employers could be coercively compelled to pay union initiation fees for their employees, regardless of whether or not the employees wished to join the union. Such a course would not be in the furtherance of legitimate union aims and activities, nor would it be for the best interests of unions of employees.

We confine our holding in the present case to the point that defendants could not use the lawful means of peaceful picketing to accomplish their unlawful objective. However, our decision should not be construed as in any way limiting or restraining peaceful picketing in the accomplishment of a lawful labor objective.

For the reasons stated in this opinion, the decree of the trial court is affirmed. Plaintiffs shall recover costs of both courts.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.