CONSUMERS SAND & GRAVEL CO. *v.* KALAMAZOO BUILDING & CONSTRUCTION TRADES COUNCIL.

1. INJUNCTION—PICKETING—COERCION OF EMPLOYER TO COMPEL EM-
   PLOYEES TO JOIN UNION.
   Record in suit to enjoin peaceful picketing at plaintiff em-
   ployer's plant *held,* to support finding of fact that purpose
   of the picketing was to coerce plaintiff to bring pressure up-
   on its employees to join a union which they had announced
   they did not choose to join (Act No. 176, § 17, Pub. Acts
   1939).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am. Jur., Labor, §§ 212, 215.
[1, 2] The Labor Management Relations (Taft-Hartley) Act, 1947,
   and its effect on the National Labor Relations (Wagner)
   Act.  173 A.L.R. 1401.
[1, 2] Legality of, and injunction against, peaceable picketing by
   labor union, of plant whose employees are represented by
   another union as statutory bargaining agent.  166 A.L.R.
   185.
[1, 2] Right of employer to injunction against picketing or boy-
   cott by labor unions to enforce a demand compliance with
   which by employer would constitute an unfair labor prac-
   tice.  162 A.L.R. 1438.
[1, 2] Purposes for which strike may lawfully be called.  71 L. Ed.
   248, at pp. 258, 262.
[2] Lawful or proper labor purpose as condition of right of peace-
   ful picketing.  174 A.L.R. 585.

2. SAME—PICKETING—COERCION OF EMPLOYER—UNLAWFUL PURPOSE.
    Where the purpose of peaceful picketing is to coerce an em-
    ployer to bring pressure upon its employees to join a union,
    the objective was for an unlawful purpose (Act No. 176, Pub.
    Acts 1939).

Appeal from Kalamazoo; Cash (Paul R.), J.
Submitted January 7, 1948. (Docket No. 20, Calen-
dar No. 43,907.) Decided May 18, 1948.

Bill by Consumers Sand & Gravel Co., a Michigan
corporation, against Kalamazoo Building & Con-
struction Trades Council and others to restrain
picketing at plaintiff's plant. Decree for plaintiff.
Defendants appeal. Affirmed.

*Goembel, White & Locke,* for plaintiff.

*Edward J. Ryan (Russell V. Carlton,* of counsel),
for defendants.

REID, J. This is a bill to enjoin peaceful picketing
of plaintiff's plant by defendant unions, it being al-
leged by plaintiff that the picketing is for the unlaw-
ful objective of compelling plaintiff to sign a closed-
shop agreement which would thus coerce plaintiff's
plant employees into joining defendant unions
against their (the employees') will, contrary to the
provisions of Act No. 176, § 17, Pub. Acts 1939
(Comp. Laws Supp. 1940, § 8628-17, Stat. Ann. 1947
Cum. Supp. § 17.454 [18]), which is as follows:

"It shall be unlawful for any employee or other
person by force, coercion, intimidation or threats to
force, or attempt to force any person to become or re-
main a member of a labor organization, or for any
employee or person by force, coercion, intimidation
or threats, to force or attempt to force any person to
refrain from engaging in employment. Violation of
this section shall be a misdemeanor and punishable
as such."

Plaintiff is a Michigan corporation located at Kalamazoo and is engaged in quarrying, manufacturing and delivering sand, gravel and cement products. It is stipulated and agreed that plaintiff is not engaged in interstate commerce and that there is no question involved under the Federal law. Defendant Kalamazoo Building & Construction Trades Council is a union organization made up of all of the building trades crafts, including truck drivers who haul material for building. Albert E. Ashenden is president and assistant business representative of defendant International Union of Operating Engineers, which has its headquarters in Washington, D. C., with a branch office at Detroit, which office is for the entire State of Michigan. Defendant George E. Standley is president of the Kalamazoo Building & Construction Trades Council. In March, 1946, a meeting was held at the Burdick hotel in Kalamazoo between the officers of the plaintiff company and some representatives of the unions, the purpose of the meeting being to discuss organizing the plant employees of plaintiff company. There were present defendants Ashenden, James B. Hogg, a business agent of the defendant International Hod Carriers Building & Common Laborers Union of America, and Mr. Pat Brady, international vice president of one of the defendant unions, also, Mr. Cole representing the truck drivers union (not a defendant). At the meeting Mr. Ashenden asked Mr. Richard H. Butcher, president of plaintiff company, if he would sign a closed-shop contract. Mr. Butcher asked for two weeks to interview his association of gravel companies. About two weeks later a second meeting was held at the Burdick hotel between representatives of the company and representatives of defendant unions; also present were Mr. Stevens, a local contractor, and plaintiff's attorney, Mr. Locke, who announced that he could not have his client sign a closed-shop

contract. Defendant Ashenden commented on the fact that plaintiff already had a closed-shop agreement with the truck drivers. It was agreed that union representatives could come to the plant the following day and talk with the men and the next day defendants Standley, Hogg and Ashenden went to the plaintiff's plant and were permitted to interview the employees but were unable to persuade the employees to join the union.

Plaintiff has about five laborers at the plant and two crane operators. Witness Francisco, a crane operator, testified that one of the men who came to see him about joining the union said:

"It would be that day or none at all, because if he didn't get an answer that day, he would go ahead and close the shop."

Mr. Clarence B. Noble, secretary and treasurer of plaintiff company, testified:

"I know that Mr. Ashenden was * * * talking to Mr. Butcher, telling us that we had to sign up with the union. That is what he told Mr. Butcher, not once but several times; we were going to have a closed shop. In the event that we didn't sign that agreement he said they would close us down."

Mr. Noble also testified:

"Mr. Standley * * * told me over the telephone that we would either have a closed shop or put a picket up there and close us down."

Defendant Ashenden on cross-examination testified as follows:

"*Q.* That is a fair proposition, to give them time to think it over, and then, of course, if they don't want to become members, then they should go some place else to work?

"*A.* Well, I think that is logical.

"*Q.*   That is generally accepted?
"*A.*   That is generally accepted.
"*Q.*   In a closed-shop agreement?
"*A.*   Yes, sir."

Ashenden further testified:

"If you had done it, that is sign a closed-shop agreement with all the parties, there would have been no picket line. We would have no trouble then."

Defendant Standley testified:

"I says, 'Locke, I just got through talking to Clarence Noble out here, and Clarence says they are not going to do anything out there. We can't do anything with them.' I says, 'Can't you do anything with them?' He says 'They have made up their mind.' I says, 'The only thing to do is put a picket on the place.'"

Following the refusal of the employees to join the union, and the refusal of the plaintiff company to sign a closed-shop agreement consequent upon the refusal of the employees to join the union, peaceful picketing occurred. It is conceded that the truck driver employees of plaintiff refused to go through the picket lines. Mr. Noble further testified that Mr. Criswell, business agent for the truck drivers union, came out and requested the drivers not to work at all because the pickets objected.

The trial court in his opinion found:

"We think the purpose of the picketing in this case was to coerce the employer to bring pressure upon his employees to join a union. Such conduct on the part of the employer * * * [would violate] the Michigan statute [Stat. Ann. 1944 Cum. Supp. § 17.454(18)] * * * and the violation of this statute is the unfair labor practice that makes this picketing a matter for the operation of an injunction in this case."

A careful consideration of the entire record convinces us of the correctness of the finding of fact

just cited. The purpose of the picketing was to cause that the truck drivers, who were union members, would not go through the picket line with their trucks in the necessary and essential operation of transporting plaintiff's materials and products to and from its plant, and thus to compel the plaintiff company, in order to continue its operations, to sign a closed-shop agreement, the result of which signing would be to compel the employees to join a union which they had announced they did not choose to join, in violation of Act No. 176, § 17, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8628-17, Stat. Ann. 1947 Cum. Supp. § 17.454 [18]).

In *Silkworth* v. *Local No. 575 of the American Federation of Labor,* 309 Mich. 746, we say at page 758:

"The testimony is convincing that defendants' real objective was to compel plaintiffs to put their drivers in defendant union by paying their initiation fees, regardless of whether or not the drivers wished to join. This was not a lawful labor objective. Defendants could not use the lawful means of peaceful picketing to accomplish such unlawful purpose."

For further discussion of matters pertinent to the issue in this case, see *Standard Grocer Company* v. *Local No. 406 of the American Federation of Labor, ante,* 276, this day decided.

We consider that the objective of the picketing in the case at bar was for an unlawful purpose. The decree appealed from is affirmed. Costs to plaintiff.

Sharpe, Boyles, North, Dethmers, Butzel, and Carr, JJ., concurred with Reid, J.

Bushnell, C. J. (*concurring in affirmance*). I concur in the result reached by Mr. Justice Reid, for the reason that the record does not disclose the ex-

istence of a labor dispute between the parties or between defendants and the employees of plaintiff. Nor is there any showing that the legitimate economic interests of the defendants or those whom they represent, or any other employees engaged in the same industry, are affected. Hence the question of freedom of speech is not involved.