KUNZIG *v.* LIQUOR CONTROL COMMISSION.

1. Intoxicating Liquors—Liquor Control Commission.
    The liquor control commission has complete control of the alcoholic beverage traffic subject to statutory limitations (Const 1908, art 16, § 11, adopted in 1932; PA 1933 [Ex Sess], No 8).

2. Constitutional Law—Construction of Amendments.
    Amendments to the Constitution must be considered and construed together, and in case of conflict the amendment adopted later in point of time, controls.

3. States—Civil Service Employee—Appeal to Civil Service Commission.
    A State employee in the classified civil service may appeal to the civil service commission for a hearing in the event of his removal or demotion in the State civil service and observance of provisions of the civil service amendment to the Constitution may be compelled, and is subject to judicial review (Const 1908, art 6, § 22, adopted in 1940).

4. Same—Liquor Control Commission Employees—Classified Civil Service—Civil Service Commission.
    Employees of the liquor control commission are not exempted from the authority of the civil service commission and where a position under the liquor control commission has not been

References for Points in Headnotes
[2] 11 Am Jur, Constitutional Law, § 54.
[3, 4] 10 Am Jur, Civil Service, § 11.
[4-6] 10 Am Jur, Civil Service, § 12.
[4-6] Effect of civil service laws to prevent abolition of office. 4 ALR 207; 37 ALR 815; 172 ALR 1369.
[7] 14 Am Jur, Costs, § 91.

selected by that commission as one of the two exempt positions permitted to each elected administrative officer, department, board or commission, such position is in the classified State civil service and the State civil service commission may exercise authority over removal of an employee from it (Const 1908, art 16, § 11, adopted in 1932; art 6, § 22, adopted in 1940).

5. SAME—LIQUOR CONTROL COMMISSION—CLASSIFIED CIVIL SERVICE —CIVIL SERVICE COMMISSION.

The liquor control commission does not have the right to abolish the position of one of its employees in the classified civil service without reference to the constitutional powers of the civil service commission (Const 1908, art 16, § 11, adopted in 1932; art 6, § 22, adopted in 1940).

6. SAME—BUSINESS MANAGER FOR LIQUOR CONTROL COMMISSION— CIVIL SERVICE COMMISSION.

Finding of civil service commission that position of business manager for liquor control commission was abolished by latter commission without previous approval of the civil service commission and without authority supported by testimony *held,* supported by record (Const 1908, art 16, § 11, adopted in 1932; art 6, § 22, adopted in 1940).

7. COSTS—PUBLIC QUESTION—LIQUOR CONTROL COMMISSION—CIVIL SERVICE COMMISSION.

No costs are awarded on review of civil service commission's order reinstating plaintiff to position as business manager for the liquor control commission, a public question as to the authority of the two commissions in the matter being involved (Const 1908, art 16, § 11, adopted in 1932; art 6, § 22, adopted in 1940).

DETHMERS and SHARPE, JJ., dissenting.

Appeal from Civil Service Commission. Submitted January 4, 1950. (Docket No. 41, Calendar No. 44,642.) Decided April 11, 1950.

Louis A. Kunzig appealed to the Civil Service Commission from his layoff as executive director of Michigan Liquor Control Commission. Order en-

tered reinstating him in that position. Liquor Control Commission appeals in nature of certiorari. Civil Service Commission intervenes. Affirmed.

*Stephen J. Roth,* Attorney General, *Graydon G. Withey,* Deputy Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Peter E. Bradt,* Assistant Attorney General, for defendant.

*Robert H. Dunn (Foss O. Eldred,* of counsel), for intervenor.

BOYLES, C. J. In this case we are asked to define the respective powers of the liquor control commission and the State civil service commission as applied to the plaintiff, under the 2 constitutional amendments * by virtue of which said commissions were created.

In 1943, the State civil service commission, at the request of the liquor control commission, established in the classified civil service the position of business manager for that commission, designated as liquor control executive 7, and otherwise called executive director. The civil service commission provided tests for candidates and after competitive examinations furnished the liquor control commission with a register from which to make selection. The plaintiff Louis A. Kunzig was selected and on March 1, 1944, became an employee in the classified civil service of the State as business manager for the liquor control commission. He remained in the performance of his duties as such until sometime in August, 1949, when the events hereinafter related took place.

---

* Liquor control commission, Mich Const (1908), art 16, § 11, adopted in 1932.

Civil service commission, Mich Const (1908), art 6, § 22, adopted in 1940.

On August 4, 1949, the liquor control commission adopted a resolution, part of which is as follows:

"Having carefully considered the above reorganization with an eye to effecting economy and cutting red tape, the commission now petitions the Michigan civil service commission to abolish the position of executive director and director of store operations of the Michigan liquor control commission."

In addition, the resolution purported to divide certain duties and responsibilities between directors of licensing, purchasing and merchandise, enforcement, finance, and personnel and office services, over which the commissioners themselves should have direct supervision. On the same date that resolution was sent to the civil service commission with a letter requesting prompt consideration.

On August 8th the civil service commission received a notice of the layoff of Kunzig and on the same date Mr. Kunzig filed with the civil service commission an appeal from such layoff and a request for early consideration thereof. The matter was set for hearing by the civil service commission pursuant to the petition of the liquor control commission and the appeal of Mr. Kunzig, for September 7, 1949, at 10 a.m.

On that date, about 30 minutes prior to 10 a.m., the liquor control commission adopted another resolution rescinding its resolution of August 4th, and further resolving:

"That the positions of executive director and of director of store operations be and the same are hereby abolished effective September 10, 1949."

At the same time, a letter was addressed to the civil service commission, stating:

"You are hereby notified that the liquor control commission has this date by resolution, abolished the

positions of executive director and of director of store operations, and that in consequence thereof Louis A. Kunzig has been laid off from his duties with this commission, all effective September 10, 1949."

Also, at the same time, another letter from the commission was addressed to Mr. Kunzig notifying him of the abolishment of his position and his layoff from his duties with the liquor control commission, effective September 10th.

An assistant attorney general then appeared at the hearing before the civil service commission, presented the resolution above referred to, and stated the position of the liquor control commission as follows:

"*Mr. Leacock* (assistant attorney general): It is the position of the liquor control commission that there is nothing in the powers enumerated in article 6, § 22, of the Michigan Constitution that authorizes the civil service commission to step over the line of demarcation between personnel problems and administrative problems and invade the administrative field. * * * We are before this commission on appeal by General Kunzig on abolishment of job and layoff. That's what we are here before you for. * * * The question is whether the liquor control commission now, after finding in their own discretion that the job is perhaps superfluous, perhaps unnecessary, perhaps a bottleneck, I do not wish to state the exact reason at this time, but for some reason in their own discretion it is not necessary or desirable, whether they may abolish that position without the approval of the civil service commission, and I think that's an entirely legal point and can only be determined by reference to the amendment. It can be determined by reference to the rules of this commission only to the degree that the rules are substantiated in the amendment. Everything rests upon the amendment.

"*Mr. Moll* (civil service commissioner): Mr. Leacock, then your position now is, the liquor control commission has the right to abolish this classified civil service position for reasons sufficient to itself without consultation or without the approval of the civil service commission? That's your present question, is it not?

"*Mr. Leacock:* That's our present position for the purpose of this hearing."

The civil service commission, evidently concluding that consideration of the abolishing of the position of Mr. Kunzig as a State employee in the classified civil service was within its jurisdiction, proceeded with the hearing, considered the duties performed by Mr. Kunzig as business manager, his efficiency in so doing, and the legality of his dismissal; and on September 7th entered an order, the material part of which is as follows:

"The civil service commission denies the legal right of the liquor control commission to abolish the position in question for any administrative reason (and particularly for any reason disclosed in the testimony), without the previous approval of the civil service commission. * * * The position of liquor control executive 7, as established by this commission, remains a position in the State civil service and the incumbent, Louis A. Kunzig, is hereby reinstated therein."

A copy of the order was sent to the liquor control commission with a demand that it be given effect. The liquor control commission notified Mr. Kunzig that it would not recognize the order and that he would not be reinstated. On October 17th the liquor control commission filed in this Court an application for leave to appeal in the nature of certiorari from the order of the civil service commission reinstating Mr. Kunzig, and such leave was granted. The civil service commission was granted leave to intervene,

and briefs have been filed here on behalf of both commissions.

Shorn of all nonessentials, the precise question is whether the liquor control commission may abolish a position in the State classified civil service without reference to any power conferred upon the civil service commission by the civil service amendment. The authority of the liquor control commission to reorganize its department, assign specific functions to its employees, formulate policies for the liquor business, and exercise complete control of the alcoholic beverage traffic in this State, including the retail sales thereof, subject to statutory limitations, is not involved. We are not here called upon to decide whether the liquor control commission may reorganize its department, open or close State liquor stores, or otherwise regulate the purchase, transportation or sale of intoxicating liquor. The Constitution * gives the liquor control commission such powers, subject to statutory limitations.†

The powers conferred upon the civil service commission by the Constitution become involved only when the acts of the liquor control commission impinge upon the powers conferred upon the civil service commission by the Michigan Constitution (1908), art 6, § 22. The 2 amendments (liquor control and civil service) must be considered and construed together, and in case of conflict the civil service amendment, adopted later in point of time, controls.

"When 2 provisions of the Constitution appear to conflict in a measure, it is the Court's duty to reconcile them as far as possible with an eye to accom-

---

* "The legislature may by law establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this State, including the retail sales thereof." Mich Const (1908), art 16, § 11, ratified at the November election, 1932.

† PA 1933 (Ex Sess), No 8 (CL 1948, § 436.1 *et seq.* [Stat Ann and Stat Ann 1949 Cum Supp § 18.971 *et seq.*]).

plishing the result intended by the pertinent sections when construed together.  *  *  *

"Rule that where there is an amendment to the law qualifying or restricting an earlier provision of the law, the later or amendatory provision must control, applies to an amendment of the Constitution which restricts a previously adopted provision." *Thoman* v. *City of Lansing* (syllabi), 315 Mich 566.

A State employee in the classified civil service may appeal to the civil service commission for a hearing in the event of his removal or demotion in the State civil service.  Under the concluding section of the amendment, observance of any of its provisions may be compelled, and is subject to judicial review.

"It does not lie within the power of the (civil service) commission to decide with finality whether its acts are in conformity with constitutional requirements as a matter of fact or of law.  That is a question for judicial determination." *Reed* v. *Civil Service Commission,* 301 Mich 137, 151.

The first paragraph of the civil service amendment does not include employees of the liquor control commission among the elective State officers, heads of departments, et cetera, who are exempt from the authority of the civil service commission, and the position of liquor control executive 7 (business manager) has not been selected by the liquor control commission as one of the 2 exempt positions which said paragraph allows to each elected administrative officer, department, board and commission.  Mr. Kunzig is a State employee in the classified State civil service and the State civil service commission has jurisdiction over his position as such.  The civil service amendment so provides, as follows:

"The commission shall classify all positions in the State civil service according to their respective duties and responsibilities, fix rates of compensation

for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the State civil service. No person shall be appointed to or promoted in the State civil service who has not been certified as so qualified for such appointment or promotion by the commission. No removals from or demotions in the State civil service shall be made for partisan, racial, or religious considerations."

The civil service commission may exercise authority over removals in the State civil service. Otherwise, it would have no initial supervisory control over a question as to whether a removal or demotion has been made for partisan, racial, or religious considerations.

We conclude that the liquor control commission in its resolution of August 4, 1949, when it petitioned the civil service commission to abolish the position of liquor control executive 7, correctly considered that the civil service commission had a constitutional measure of control over the removal of Mr. Kunzig. Instead of presenting to the civil service commission the advantages or necessity of abolishing this classified civil service position in the process of a reorganization of the department, it erroneously concluded that the civil service commission had no authority over the abolishment of a position in State employment in the classified civil service. On its appeal here the liquor control commission relies upon its claim that it had the right to abolish a position in the classified civil service without reference to the constitutional powers of the civil service commission. That is not the proper construction of the constitutional provisions here under consideration.

The finding of the civil service commission was based on the showing made at the hearing and need not necessarily be considered as a finding that the attempt to abolish the position of liquor control executive 7 and to dismiss Mr. Kunzig was induced by subterfuge or fraud.  In this case the employee expressly disavowed any claim that his removal was brought about purely for political reasons.

The order of the civil service commission was within its constitutional powers and is affirmed.  No costs are awarded, a public question being involved.

Reid, Butzel, Carr, and Bushnell, JJ., concurred with Boyles, C. J.

North, J., concurred in the result.

Dethmers, J. (*dissenting*).  The primary question in this case is whether the liquor control commission may abolish a position in the State classified civil service under its jurisdiction without the approval of the civil service commission.  In approaching this question, it is my view that the constitutional provision (Mich Const 1908, art 16, § 11, adopted in 1932) that the liquor control commission shall exercise, subject to statutory limitations, complete control of the liquor traffic, does not serve to place the liquor control commission, for purposes of decision herein, in a position stronger or different than that of any elected administrative officer, department, board or commission, whether constituted by the Constitution or statute, and that, therefore, with reference to the question before us, the rule of law applicable to any of those appointing authorities applies to the liquor control commission.  Hereinafter the liquor control commission will be referred to as the defendant, the civil service commission as intervenor and the term "appointing authorities" will be used to signify any

or all elected administrative officers, departments, boards or commissions, including defendant.

I am not in accord with the view that the power of an appointing authority to create or abolish a position under its jurisdiction in the classified civil service is, by the civil service amendment (Const 1908, art 6, § 22, adopted in 1940), made subject to the approval of the intervenor.

At the outset, stock should be taken of precisely what is involved in the answer to the above question and what its implications may be. Defendant says that a holding that it may not abolish a position in its agency, except with the approval of intervenor, would mean that the civil service amendment has constituted intervenor the final arbiter and administrative authority on the question of whether appointing authorities may from time to time reorganize their departments, increase or curtail their services to the public, or add to or dispense with certain functions, if, in so doing, positions in the classified civil service are, as a result, created or abolished. Intervenor vigorously denies this and says that defendant's conclusion in this regard is predicated on the theory that intervenor claims the authority to establish or abolish positions, which authority intervenor insists it is not claiming. Granted that intervenor does not claim the authority to establish or abolish positions, the fact remains that this case is before us solely because intervenor does insist that it has authority to approve or disapprove such creations or abolishments by appointing authorities and that they are invalid without its approval. Inherent in such veto power is the power to control administrative policies. The facts of the instant case afford an apt illustration. In 1943, defendant commission desired, as an administrative arrangement, to vest certain of the commissioners' powers in a so-called business manager. In 1949, defendant commission

decided to reassume those powers, to cause them to be exercised by the members of the defendant commission themselves and, hence, to dispense with the services of a business manager. Would not power in the intervenor to veto such abolishment of the position of business manager amount to the exercise of a control over administrative policies? Assume that the defendant desired, as a matter of policy, to tighten enforcement of its liquor control regulations and, for that purpose, to double its field force, or, vice versa, to relax enforcement, to remove certain restrictions and, in consequence, to cut its field force in two. Would not the power of the intervenor to approve or disapprove the increase of such positions on the one hand, or the decrease on the other, give intervenor the final say on a question of liquor control policy? In 1945, the legislature provided by law for a board of hearing commissioners to conduct hearings on matters referred to it by the defendant. The act (PA 1945, No 133 [CL 1948, § 436.5a (Stat Ann 1949 Cum Supp § 18.975 [1])]) required the attorney general to assign 3 assistants to conduct hearings before that board. It is reasonable to assume that this necessitated the creation of 3 new positions as assistants attorney general. Assume that hereafter the legislature abolishes the board of hearing commissioners, repealing the act requiring the services of 3 assistants attorney general, with the result that the attorney general finds himself in need of 3 fewer assistants. Is it within the province of intervenor to approve or disapprove of the creation in the first instance, or abolishment in the second, of those 3 positions in the classified civil service regardless of legislative will or administrative policy or requirements? Suppose that the attorney general decides, as a matter of policy, to restrict the giving of legal opinions to a narrower circle than that to which they are now available, ob-

viating the need for the services of 2 of his assistants; or that defendant decides, as a matter of economy or increased efficiency or for whatever reason of its own, to decrease the number of liquor stores in a city from 4 to 3, thus rendering the services of 1 liquor store manager unnecessary. If intervenor has the right to approve or disapprove the abolishment of the positions involved, does it not actually exert control over administrative policy and procedure? Anent this subject, we find in intervenor's brief the following:

"The State civil service commission defies anyone to point to an instance in the nearly 9 years of its existence where it has refused to approve the abolition and consequent layoff of an unneeded civil service employee where the layoff rules of the commission were complied with, and in this connection this commission states now, and always has taken the position, that it is entirely in favor of economy in State government *as long as it is commensurate with the rendition of efficient service.*"

In the quoted statement intervenor reveals, wittingly or otherwise, its view that it has the power to disapprove abolishments of positions attempted by appointing authorities for reasons of economy, and particularly so, if, in intervenor's opinion, abolishment would not be "commensurate with the rendition of efficient service." What clearer claim could be made to power to determine the kind and amount of service to be rendered to the public in any field of administrative activity? And for intervenor to claim otherwise would be utterly inconsistent with the claim it makes herein to the power to approve or disapprove the creation or abolishment of positions by appointing authorities. I am unable to agree with the statement that the power of intervenor to veto abolishments of positions would not affect the power of defendant to "reorganize its department, assign

specific functions to its employees, formulate policies", et cetera, or to "open or close liquor stores or otherwise regulate the purchase, transportation or sale of intoxicating liquor." The court cannot be called upon to do a vain thing. *Rust* v. *Conrad,* 47 Mich 449 (41 Am Rep 720). The law will not indulge in or require idle formalities. *Bugajski* v. *Siwka,* 200 Mich 415; *McIntosh* v. *Hopkins,* 255 Mich 493; *Smith* v. *Hubert Land Co.,* 261 Mich 464. Applying those principles here, the law, in this instance the civil service amendment, will not be held to require intervenor's approval of defendant's abolishment of a position if, at the same time, it permits defendant, without intervenor's approval, to so reorganize its department, assign functions to other positions and formulate policies that the position in question is, in effect, abolished in that it is left with no functions or duties to perform, with the result that intervenor must, of necessity, reclassify it as a position without duties and, accordingly, without pay. On the other hand, if defendant and other appointing authorities may not so reorganize, assign functions and duties to their employees or formulate policies with the results indicated above, without intervenor's consent, then, indeed, has intervenor been enthroned as supreme arbiter on questions of administrative policies, practices and procedures.

The force of the foregoing conclusion is not diminished by the suggestion that the decisions of intervenor on position abolishments are not final, but subject to review in this Court. Under such theory, given a situation in which an appointing authority, in good faith and without fraud or subterfuge, determines, for reasons of economy, to abolish a position and the intervenor, equally in good faith, but because it feels the efficiency of State service would be impaired, decides to disapprove such abolishment, this Court would find itself in the position of being

called upon to determine the administrative policy question of whether the ends of economy on the one hand, or efficiency, on the other, should be served. This would amount to the exercise of nonjudicial powers and duties by this Court and be in violation of the Michigan Constitution of 1908, art 4, § 2. *Local 170, Transport Workers Union of America* v. *Genesee Circuit Judge,* 322 Mich 332. Administrative questions are not in their nature judicial and are not subject to review. *Benjamin* v. *Manistee River Improvement Co.,* 42 Mich 628. The judicial power cannot interfere with the legitimate discretion of any other department of government. *City of Detroit* v. *Wayne Circuit Judge,* 79 Mich 384. A statute requiring a hearing before and a written order by a circuit judge as a prerequisite to the discharge of a war veteran from public employment was held unconstitutional as conferring executive powers upon the courts. *Koeper* v. *Detroit Street Railway Commission,* 222 Mich 464. In *Goodfellow* v. *Detroit Civil Service Commission,* 312 Mich 226, it was held that the function of the Detroit civil service commission in reviewing discharges of city employees was essentially administrative so that a court might not afford relief thereon because the Michigan Constitution of 1908, art 4, forbids usurpation of administrative functions by this Court. (Question of fraud was not involved.) To the same effect, see *Purdie* v. *Detroit Police Department Trial Board,* 318 Mich 430; *Mapley* v. *City of Pontiac,* 288 Mich 396.

There is no doubt that the people may, by constitutional amendment, invest a civil service commission with the powers claimed by intervenor, even though the consequence be to constitute intervenor a supervisor over the administrative policies of the various State departments and agencies. *Civil Service Commission* v. *Auditor General,* 302 Mich 673; *State of Delaware, ex rel. Attorney General,* v. *Emerson,* 40

Del 233 (8 A2d 154).  Was it the intention of the people so to do when they adopted article 6, § 22? A fundamental principle of constitutional construction is to discover and give effect to the intent of the people adopting it.  *Holland* v. *Clerk of Garden City,* 299 Mich 465; *City of Jackson* v. *Commissioner of Revenue,* 316 Mich 694.  In cases of doubtful construction of constitutional provisions resort may be had to the history of the times (*Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich 261) and regard should be given to the circumstances leading to their adoption and the purposes thereby sought to be accomplished.  *Civil Service Commission* v. *Auditor General, supra; City of Jackson* v. *Commissioner of Revenue, supra; Detroit Board of Education* v. *Superintendent of Public Instruction,* 319 Mich 436; *John Hancock Mutual Life Insurance Co.* v. *Ford Motor Co.,* 322 Mich 209.  In adopting an amendment the people are presumed to have acted in the light and understanding of prior and existing laws and of existing circumstances, and, in the use of terms, to have meant what those terms generally implied at that time.  See *Saginaw City Council* v. *Saginaw Policemen & Firemen Retirement System Trustees,* 321 Mich 641, and cases therein cited and, also, *Detroit Board of Education* v. *Superintendent of Public Instruction, supra.*  What were the evils sought to be cured and objects to be attained by the amendment?  What did the people intend in writing the merit system of civil service into the Constitution?  What was the existing concept of such a system when the amendment was adopted?  The answers to these questions are of controlling importance in the absence of the expression of a contrary intention in the amendment.  In *Civil Service Commission* v. *Auditor General, supra,* we said that the purpose of the people in adopting the amendment was to abolish the spoils system with its resultant evils of ineffi-

ciency, extravagance, political assessments and corruption of the electoral franchise. Retention by appointing authorities of the powers to create and abolish positions would not be in conflict with that purpose of the people so long as intervenor is empowered to classify the positions, determine the qualifications of and supply the candidates for such positions, fix the rates of pay, et cetera. In adopting the amendment the people intended to bring about a betterment in administration of State employment civil service (*Reed* v. *Civil Service Commission,* 301 Mich 137) by putting an end to the turnover of personnel upon each change of administration and substituting therefor continuity and security in positions, so long as they continued to exist, for employees whose qualifications and performance merited it. This was calculated to increase efficiency and to further economy. The ultimate object was not, however, increased benefits to employees, but, rather, by means of such benefits, the improvement of the State service. There is nothing to indicate that it was the thought of the people that government jobs should exist for the benefit of employees, as distinguished from the concept that positions exist and are filled for the purpose of serving and benefiting the public, or that the people desired that employees should be continued in positions after appointing authorities have determined that the need therefor has ended. The abolishment of positions by appointing authorities without intervenor's approval is entirely consistent with the mentioned intentions and thinking of the people when the amendment was adopted. Nowhere does it appear that it was the opinion of the public that an evil existed as to the creation, much less the abolishment, of positions, which was to be corrected by placing control thereover in intervenor. Neither does it appear that there was a public demand or clamor at the time for subjecting ad-

ministrative policies, in the manner hereinbefore
considered, to the approval or disapproval of inter-
venor.   Unless the express language of the amend-
ment discloses a clear intention to the contrary, it
must be presumed that in providing for a merit sys-
tem of civil service the people intended that which
at the time was generally contemplated by such sys-
tem and that they acted in the light and knowledge
of existing and prior laws.   In *Fricke* v. *City of
Grand Rapids,* 278 Mich 323, this Court, some 4 years
prior to the adoption of the amendment, said:

"Authorities universally sustain the proposition
that a city can dismiss a civil service employee by
abolishing the position which the employee holds.
*Smith* v. *Flint City Commission,* 258 Mich 698, and
cases cited therein; and that a city may abolish a
position for bona fide reasons of economy, *Slavin* v.
*City of Detroit,* 262 Mich 173.   It is conceded by
plaintiffs that *if an office or position* in the city gov-
ernment *is abolished* for bona fide reasons of econ-
omy, the holder of that position is *not entitled to a
hearing before the civil service board* under the civil
service provisions of the city charter; and that *the
city manager is the person to decide how many
patrolmen should be at* any given time *in the police
department."*

The language quoted, construing an ordinance, re-
veals the concept prevailing at the time that an ap-
pointing authority might, in good faith, create or
abolish positions in the civil service.   Likewise, it
was clearly the view of this Court, as expressed in
*Civil Service Commission* v. *Auditor General, supra,*
that the civil service amendment should not be con-
strued as affecting the then existing order, arrange-
ment, and division of governmental powers or the
exercise thereof, except as the amendment expressly
provides therefor in unmistakable terms.   Is there
to be found in the civil service amendment an express

grant to intervenor of the power to approve or disapprove the creation or abolishment of positions by appointing authorities and thus, in any manner, to regulate or control administrative policies?

The amendment empowers intervenor to (1) classify all positions in the State civil service, (2) fix rates of compensation for all classes, (3) approve or disapprove disbursements for all personal services, (4) determine qualifications of all candidates for positions, (5) make rules covering all personnel transactions, (6) regulate all conditions of employment. No other powers are expressly conferred. *Expressio unius est exclusio alterius.* It must be held that no other or greater power is given to intervenor than those specified and enumerated in the amendment. See *Michigan Wolverine Student Cooperative, Inc.,* v. *Wm. Goodyear & Co.,* 314 Mich 590, and cases therein cited. Had it been the intention of the people to grant to intervenor the power here contended for, it would have been easy to do so in express terms. In view of the general practice to the contrary in civil service systems then existing, it would seem that had the people intended such a departure from accepted practice in civil service, they would have expressed it in plain language and that, having failed to do so, they did not so intend.

Not only is the amendment lacking in express authority for intervenor to create or abolish or to approve or disapprove the creation or abolishment of positions by appointing authorities, but, significantly, the first enumerated power granted to intervenor is to "classify all positions" in the State civil service. This clearly presupposes the prior existence of such positions created by appointing authorities without the let or hindrance of intervenor. Corollary thereto is power in the appointing authorities to abolish positions without intervenor's approval. It is said, however, that intervenor's power to clas-

sify all positions in the State civil service according to their respective duties and responsibilities precludes a holding that appointing authorities may create or abolish positions without intervenor's approval; that if an appointing authority might abolish a position once classified by intervenor, without the latter's approval, and assign the duties and responsibilities of that position to persons occupying other positions, this would represent a complete nullification of intervenor's classifying powers. Such conclusion depends entirely upon one's conception of the meaning of the power granted to classify positions according to responsibilities and duties. It requires no distortion of the meaning of terms to interpret this power granted to intervenor to mean that as positions are created and duties assigned thereto by appointing authorities from time to time intervenor shall classify such positions accordingly and, if the duties are altered and functions reapportioned, intervenor shall reclassify the positions accordingly. On the other hand, to construe the classifying powers of intervenor so as to include therein the power to freeze into a given position the duties and responsibilities upon which the original classification of the position was based, beyond the reach of the appointing authority to change such duties and functions or assign them to other positions, is to read into the amendment something not specifically provided therein and to give to the word "classify" a distorted meaning, thus conferring upon intervenor, by implication, a power not necessary to the exercise and carrying into effect of its express powers. (For cases setting forth tests for powers by implication see *United States* v. *Fisher,* 2 Cranch (6 US) 358, 396 [1805] [2 L ed 304]; *M'Culloch* v. *Maryland,* 4 Wheat (17 US) 316, 411 [1819] [4 L ed 579]; *United States* v. *Marigold,* 9 How (50 US) 560 [1850] [13 L ed 257]; *Legal Tender Cases,* 12 Wall (79 US)

457, 532 [1871] [20 L ed 287]; *Interstate Commerce Commission* v. *Brimson,* 154 US 447, 472 [1894] [14 S Ct 1125; 38 L ed 1047]; *In re Quarles,* 158 US 532, 537 [1895] [15 S Ct 959; 39 L ed 1080]; *In re Debs,* 158 US 564, 578 [1895] [15 S Ct 900; 39 L ed 1092].) It is entirely possible to leave the creating and abolishing of positions exclusively in the hands of appointing authorities without, in any manner, circumscribing the powers of intervenor to classify such positions as may from time to time exist. In fact, we are informed by intervenor's brief that that is precisely the situation existing under the Federal civil service laws and apparently under those of 28 other States. Intervenor also urges that creation or abolishment of a position comes within the ambit of "personnel transactions" concerning which the amendment gives intervenor the power to make rules and regulations. As well say that when the legislature created by statute the public service commission, the corporation and securities commission or the department of administration, it was engaging in personnel transactions inasmuch as the creation thereof resulted in positions to be filled by personnel. Personnel transactions do not occur until after positions have been created and have been or are in the process of being filled by personnel. Accordingly, intervenor's power to make rules and regulations covering personnel transactions in no wise includes the power to create or abolish or to approve or disapprove the creation or abolishment of positions.

Intervenor raises the hue and cry that a holding that appointing authorities may create and abolish positions without intervenor's approval would serve to emasculate civil service and bring the inevitable return of the spoils system. Precisely how and in what respect such a result would follow intervenor does not point out, nor does it explain how its approval of position abolishments by appointing au-

·thorities would avert the disaster. Such an explanation might have proved of interest in view of the fact that intervenor's brief throws out the challenge, hereinbefore quoted, defying anyone to point to an instance in the 9 years of intervenor's existence where intervenor has refused to approve the abolishment of a position. At the same time, intervenor's brief insists that decisions from any of the 28 States above referred to or of the Federal courts permitting abolishment of positions without civil service commission approval are not in point and of no help because in Michigan alone does civil service exist by virtue of a self-executing constitutional amendment, with the result, as intervenor says, that under the systems of the other jurisdictions the commissions cannot concern themselves with position creations or abolishments but only with examining and certifying duties. Adopting intervenor's thesis on this point, must it be concluded that in Michigan alone does the merit system of civil service exist unemasculated and undefiled by spoils? In the same vein, intervenor says that, if the appointing authority may abolish one position without intervenor's approval, then "5, 10 or a thousand positions likewise may be abolished and replacements made with those who stand in favor with the then administration." The answer to that dire prediction is to be found in intervenor's brief as follows:

"It may have been possible that the reason for the withdrawal of the resolution of August 4th which contained the set up for the new position was brought about because of appellant's realization that *if the old position were abolished* and the *new position established* that *the prior incumbent,* under the rules of civil service, *would have been entitled to appointment to the new position.*"

Suppose that an appointing authority should create 1, 5, 10 or a thousand positions without inter-

venor's approval. Under the amendment intervenor would classify the positions, fix rates of pay and furnish the candidates therefor. How is civil service thus emasculated and the spoils system restored? Or suppose that an appointing authority abolishes 1, 5, 10 or a thousand positions without intervenor's approval and thereafter creates the same or other positions with like duties and functions and seeks to cause them to be filled, as intervenor prophesies, with those who stand in well with the then administration. The moment such positions are recreated or the similar positions created intervenor will classify, fix rates of pay and control the matter of who shall fill the positions. The last quoted portion from intervenor's brief indicates that under its rules the former incumbents of abolished positions are the ones who would forthwith be installed in the newly-created positions. Wherein lies the emasculation of civil service and the return to the spoils system? Again, it is said that elected officials, boards, and commissions are wont to create positions with nonexistent or fictional duties as a reward for the politically faithful, and that such a practice would result from a holding adverse to intervenor's claims. Let it be remembered, however, that intervenor classifies the positions and fixes the rates of pay. If it were to find that a position created by an appointing authority has no real duties and only fictional functions, it would rest within the province of intervenor to classify the position and fix the rate of pay accordingly and, finally, to furnish the candidate for such nonfunctional and, if intervenor does its duty, nonpaying position. The hazards to civil service envisioned by intervenor in this connection seem remote indeed.

Finally, it is urged (1) that a holding that appointing authorities may create and abolish positions without intervenor's approval would result in a practice of fraud and subterfuge under which the civil serv-

ice amendment would be circumvented and appointing authorities would use the power to abolish positions as a ruse for getting rid of employees not in favor with the then administration and (2) that, therefore, an abolishment must be submitted to intervenor for approval, if for no other reason, at least for a determination of whether it was made in good faith or was a mere ruse, fraud or subterfuge. There can be no doubt that powers permissible when exercised for legitimate purposes are to be denied when exercised for the purpose of achieving an illegal result. *Silkworth* v. *Local 575, American Federation of Labor,* 309 Mich 746. That which may not be done directly may not be accomplished by indirection. *Civil Service Commission* v. *Auditor General,* 302 Mich 673. Hence, though appointing authorities may lawfully create and abolish positions when acting in good faith, they may not do so for the purpose of accomplishing that which is by the amendment inhibited; that is to say, for the purpose of destroying the security and tenure of competent and qualified employees in positions which actually continue to exist. As said in the matter of *Wipfler* v. *Klebes,* 284 NY 248 (30 NE2d 581) concerning New York's constitutionally-created civil service system:

"It does mean that the form of abolishing the position may not be used to cloak a design to oust from his position a person lawfully appointed and to substitute a person not appointed according to merit and fitness established by competitive examination. 'We have pointed out often that the mandate of the Constitution applies to every position in the civil service of the State and that "the legislature may not disregard, evade or weaken the force of that mandate." ' * * * Statutes conferring powers upon local bodies to abolish positions cannot be read or given effect as a grant of power to defeat the mandate of the Constitution and the provisions of the civil serv--

ice law, enacted for the purpose of enforcing the mandate. The court looks behind the form of the ordinance to determine its intended purpose or effect, and where an ordinance in legal form cloaks an illegal purpose and produces an illegal result the courts have said that the ordinance is not adopted in 'good faith' and has no effect."

(The court held that the abolishment of the position of an employee whose services were no longer needed did not evidence a lack of good faith and was, therefore, legal.)

The function of determining the existence of fraud or subterfuge in connection with the abolishment of a position is, however, not administrative but judicial. Intervenor is a part of the executive department of the State government. *Civil Service Commission* v. *Auditor General, supra.* Fraud is a conclusion of law from facts. *Scofield* v. *Clarke,* 179 Mich 681. Drawing conclusions of law is a judicial and not an executive function. It is not within the province of the civil service commission. (Of interest in this connection is *Michigan Mutual Liability Co.* v. *Baker,* 295 Mich 237.) For cases in which this Court has taken cognizance of the presence or absence of bad faith, fraud or subterfuge as a means of defeating the veteran's preference or civil service rights of an employee and in which we have indicated the same to be a factor in the determination of the extent of such rights in connection with the abolishment of a position see *Slavin* v. *City of Detroit,* 262 Mich 173; *Walkling* v. *Smith,* 276 Mich 193; *Fricke* v. *City of Grand Rapids, supra; Clark* v. *Detroit Police Commissioner,* 299 Mich 78; *Smith* v. *Flint City Commission,* 258 Mich 698; *Swantush* v. *City of Detroit,* 257 Mich 389. Employees affected by abolishments of positions have recourse to the courts for the purpose of trying the good faith thereof. There are indications in the record that it was plain-

tiff's position before the intervenor that the abolishment of the position of business manager was not bona fide or in good faith. The way is open to plaintiff to present that claim and to test the validity of the abolishment by appropriate proceedings in a court of competent jurisdiction.

The order of the civil service commission here appealed from should be reversed and set aside, but without prejudice to the rights of plaintiff or intervenor to bring appropriate proceedings in a court of competent jurisdiction. No costs, a public question being involved.

SHARPE, J., concurred with DETHMERS, J.